**NORTH AMERICAN CAPITAL COR- PORATION, Appellant,**

**v.**

**Jesse L. McCANTS, Sr., et al., Appellees.**

Supreme Court of Tennessee.

June 3, 1974.

Thomas O. Helton, Stophel, Caldwell & Heggie, Chattanooga, for appellant.

Chambliss, Bahner & Crawford, Chattanooga, for appellees.

## OPINION

DYER, Chief Justice.

This suit was brought to recover the balance due under a lease contract of real estate. The case comes to this Court by an agreed stipulation of facts. In this opinion the lessor, North American Capital Corporation, will be referred to as the appellant, and Jesse L. McCants, Sr., et al, the lessees, as the appellees. The issue involved is application of the contract doctrine of frustration of commercial purpose.

Appellees desired to open a federal savings and loan association which required a charter from the Federal Home Loan Bank Board. This federal agency required that the premises used be under lease and approved prior to the issuing of a charter. This requirement was known to both parties. Appellees entered into negotiations with appellant to obtain a lease on certain real estate to be used as an office for the proposed federal savings and loan association. Prior to the execution of the lease the proposed site was inspected by a representative of this federal agency who unofficially assured appellees the site would be approved.

The lease was executed in June, 1970, for a term of five years, beginning August 1, 1970. The lease provided that the leased premises be used exclusively as office space for a federal savings and loan association. The contract also disallowed subletting without the written consent of the appellant.

After execution of this lease the Federal Home Loan Bank Board refused to issue a charter to appellees to operate a federal savings and loan association at the leased location. This effectively prevented appellees from using the leased premises under the terms of the lease as there was no condition in the lease pertaining to such refusal. There is no claim that this refusal on the part of the federal agency was the fault of either of the parties.

Appellees, although not occupying the premises, paid the monthly rent from August, 1970 to November, 1970, and thereafter refused to make any further payments. Appellant continued to demand the monthly payments in accordance with the lease. At the same time the appellant made efforts to mitigate the damages and did secure another tenant for the premises for a term beginning August 1, 1971.

Appellant brought the suit sub judice on October 1, 1971, seeking under the terms of the lease the sum of $3,520.93, plus attorneys fees. The chancellor dismissed the suit upon the following finding:

It is the opinion of the Court that the doctrine of commercial frustration will be applied by the Tennessee Courts to cases involving a lease where the provisions of the lease prohibit absolutely the conduct of any business other than the

business specified by the parties. See generally, 49 Am.Jur.2d, Landlord and Tenant §§ 269, 584, and Heart v. Brewing Co., 121 Tenn. 69, 113 S.W. 364, and Barrasso v. Brewing Co., 1 Tenn.C.C.A. (Higgins) 662.

The contract doctrine known as "frustration of commercial purpose" is reviewed and the general principles applicable thereto correctly stated by Mr. Justice Traynor in Lloyd v. Murphy, 25 Cal.2d 48, 153 P.2d 47 (1944), as follows:

Although commercial frustration was first recognized as an excuse for nonperformance of a contractual duty by the courts of England (Krell v. Henry, C.A., 1903, 2 K.B. 740; Blakely v. Muller, K. B., 19 T.L.R. 186; see McElroy and Williams, The Coronation Cases, 4 Mod. L.Rev. 241) its soundness has been questioned by those courts (see Maritime National Fish, Ltd., v. Ocean Trawlers, Ltd., [1935] A.C. 524, 528–29; 56 L.Q. Rev. 324, arguing that Krell v. Henry, supra, was a misapplication of Taylor v. Caldwell, 1863, 3 B.&S. 826, the leading case on impossibility as an excuse for nonperformance), and they have refused to apply the doctrine to leases on the ground that an estate is conveyed to the lessee, which carries with it all risks. . . . Many courts, therefore, in the United States have held that the tenant bears all risks as owner of the estate, . . . but the modern cases have recognized that the defense may be available in a proper case, even in a lease. As the author declares in 6 Williston, Contracts (Rev.Ed.1938), § 1955, pp. 5485–5487, "The fact that lease is a conveyance and not simply a continuing contract and the numerous authorities enforcing liability to pay rent in spite of destruction of leased premises however, have made it difficult to give relief. That the tenant has been relieved, nevertheless, in several cases indicates the gravitation of the law toward a recognition of the principle that fortuitous destruction of the value of performance

wholly outside the contemplation of the parties may excuse a promisor even in a lease. * * *

"Even more clearly with respect to leases than in regard to ordinary contracts the applicability of the doctrine of frustration depends on the total or nearly total destruction of the purpose for which, in the contemplation of both parties, the transaction was entered into."

The principles of frustration have been repeatedly applied to leases by the courts of this state (citing cases) and the question is whether the excuse for nonperformance is applicable under the facts of the present case.

Although the doctrine of frustration is akin to the doctrine of impossibility of performance (citing cases) since both have developed from the commercial necessity of excusing performance in cases of extreme hardship, frustration is not a form of impossibility even under the modern definition of that term, which includes not only cases of physical impossibility but also cases of extreme impracticability of performance (citing cases). Performance remains possible but the expected value of performance to the party seeking to be excused has been destroyed by a fortuitous event, which supervenes to cause an actual but not literal failure of consideration. (citing cases).

The question in cases involving frustration is whether the equities of the case, considered in the light of sound public policy, require placing the risk of a disruption or complete destruction of the contract equilibrium on defendant or plaintiff under the circumstances of a given case (citing cases), and the answer depends on whether an unanticipated circumstance, the risk of which should not be fairly thrown on the promisor, has made performance vitally different from what was reasonably to be expected . . . . The purpose of a contract is to place the risks of performance upon

the promisor, and the relation of the parties, terms of the contract, and circumstances surrounding its formation must be examined to determine whether it can be fairly inferred that the risk of the event that has supervened to cause the alleged frustration was not reasonably foreseeable. If it was foreseeable there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed.

The doctrine of frustration has been limited to cases of extreme hardship so that businessmen, who must make their arrangements in advance, can rely with certainty on their contracts. (Citing cases). The courts have required a promisor seeking to excuse himself from performance of his obligations to prove that the risk of the frustrating event was not reasonably foreseeable and that the value of counterperformance is totally or nearly totally destroyed, for frustration is no defense if it was foreseeable or controllable by the promisor, or if counterperformance remains valuable. (Citing cases). 153 P.2d at 49–51.

Of the two cases cited by the chancellor to support the dismissal of the complaint, two of a number that arose during the time of the imposition of state and national prohibition, only Heart v. East Tennessee Brewing Co., 112 Tenn. 69, 113 S.W. 364 (1908), is clearly applicable. In *Heart*, the defendant leased premises for purposes of operating a saloon. This purpose, as in the present case, was apparently embodied in the lease agreement. Thereafter, by act of the State legislature, sale of intoxicating liquors was prohibited. This Court held that the tenant was excused from further performing his promise to pay rent. Though the opinion in *Heart* appears to be grounded on the nonenforceability of a contract to do an illegal act, it is apparent that the mutual promises in this lease contract required only that the landlord convey the premises and that the tenant pay the rent, the basic obligations of any lease agreement. These obligations were not rendered illegal by the act of the Legislature and remained performable and enforceable regardless of the legality of the lessee's use. Nothing in the Court's opinion indicates that the continued validity of the lease itself was conditioned upon the operation of a saloon. The purpose of the contract, however, was frustrated as pointed out by the Court in its concluding paragraph:

> It is not necessary in this case to determine whether or not the contract contained in the lease restricts the use of the property for the sale of intoxicating liquors. It was the purpose of both lessor and lessee, as clearly expressed in the instrument, that it should be used as a saloon, and, this being made unlawful by law, the contract is no longer enforceable. 112 Tenn. at 74, 113 S.W. at 365.

The appellant cites several cases in support of its proposition that this Court has rejected the doctrine of frustration of commercial purpose. The holding in *Heart* and dictum in Hinchman v. City Water Co., 179 Tenn. 545, 167 S.W.2d 986 (1943), discussed below, refute this assertion. In *Hinchman*, the City Water Company entered into a fifty-year contract to purchase water to be furnished the citizens of Chattanooga. The water was supplied from a spring on Lookout Mountain. Several years before the end of the lease the water from the spring because of the growth of the Lookout Mountain community, and through no fault of the Water Company, became polluted and was not useable for human consumption. The issue before the Court was whether the Water Company, under the circumstances, was bound under a mandatory renewal clause in the contract to renew the contract for another fifty years. The Water Company alleged that it had contracted for water that was pure and useable for human consumption. The Court in reaching its decision relieving the Water Company of liability, cited the case of Taylor v. Caldwell, 3 B.&S. 826, 122

Eng.Rep. 309 (1863), the leading case establishing what is known as the new or modern rule in regard to the defense of impossibility of performance of a contract. The Court in the petition to rehear on the issue of impossibility of performance refers to Taylor v. Caldwell as a turning point in judicial thought. The *Hinchman* case was decided on the basis of impossibility of performance which has also, as Justice Traynor indicates, been extended to encompass instances of impracticability. In response to the petiton to rehear, the Court cited the rule as follows:

> The new rule, as stated in the opinion herein, is: "The essence of the modern defense of impossibility is that the promised performance was at the making of the contract, or thereafter became, impracticable owing to some extreme or unreasonable difficulty, expense, injury, or loss involved, rather than that it is scientifically or actually impossible."

In *Hinchman* we think the elements leading the Court to its decision were first, the thing contracted for (pure water) did not exist at the renewal date, and, secondly, even though it would have been possible to purify the water, such would be impracticable due to an unreasonable cost.

In *Hinchman,* after citing Taylor v. Caldwell, the Court also cites Krell v. Henry, 2 K.B. 740 (1903), referring to it as "quite in point here." Krell v. Henry is one of the "Coronation Cases." These cases arose in the early part of this Century as a result of the contractual disappointments that developed when the coronation of the new King, Edward VII, was postponed at the last moment because of his illness. They represented the formal recognition of the doctrine of commercial frustration. The use of this case in *Hinchman* does indicate, as Justice Traynor points out in Lloyd v. Murphy, *supra,*

the close kinship between the doctrine of frustration and the doctrine of impossibility of performance.

We regard the holding in *Heart* and the dictum in *Hinchman* impliedly approving the holding in the "Coronation Cases" as authority that this Court has heretofore accepted the doctrine of frustration of commercial purpose. The question remains, however, whether upon applying the sound reasoning of Justice Traynor in Lloyd v. Murphy, *supra,* to the facts of this case, the appellee may be excused from performing the lease contract.

In the case sub judice, there was a total or near total destruction of the purpose (use of the premises for a federal savings and loan association) for which in the contemplation of both parties the lease was entered into. This is a fact necessary to exist before the defense of frustration of commercial purpose is applicable. The supervening event (failure of federal officials to approve the site) was not wholly outside the contemplation of the parties. The appellees had notice of this possibility and, in fact, had a representative of this federal agency give them tentative unofficial approval of the site. The occurrence of this supervening event was then reasonably foreseeable.

The judgment of the chancellor is reversed and the cause remanded where a judgment will be entered in favor of North American Capitol Corporation. Under the stipulation the amount due North American Capitol Corporation is the sum of $2,937.08, plus attorneys' fees. The exact amount of attorneys' fees is not stipulated and if necessary proof can be taken as to this amount.

McCANLESS and FONES, JJ., and LEECH and JENKINS, Special Justices, concur.