Robert J. HOWARD, d/b/a Howard
Construction Company,
Plaintiff-Appellant,

v.

Terry NICHOLSON and George G.
Nicholson, his wife,
Defendants-Respondents.

No. 37156.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Sept. 13, 1977.

Paxton H. Ackerman, Clayton, for plaintiff-appellant.

Ziercher, Hocker, Tzinberg, Human & Michenfelder, Robert C. Jones, John G. Young, Jr., Herbert E. Bryant, Clayton, for defendants-respondents.

McMILLIAN, Presiding Judge.

Appellant Robert J. Howard appeals from a judgment entered by the circuit court of St. Louis County, Missouri, in favor of defendants Terry Nicholson and George G. Nicholson, his wife, denying appellant's claim for loss of profits in a breach of contract action.

Appellant and respondent Terry Nicholson entered into the contract which is at issue on November 6, 1969. Appellant was to construct a building in accordance with certain plans and specifications provided by Honey's International, Ltd. (Honey's) for $199,740 with a completion date of May 1, 1970. The building was designed to be used as a bridal salon. Respondents had signed a lease with Honey's on October 15, 1969. The lease provided that Honey's was to use the premises as a bridal salon for a term of 20 years.

Respondents later met with the Security Title Company to complete the financing arrangements. On November 14, 1969, respondents signed a note, deed of trust and a construction and disbursing escrow agreement. The escrow agreement provided for the construction and completion of all improvements by December 14, 1970, and was signed by both appellant and respondents, as well as representatives of Security Title Company and Hamiltonian Federal Savings and Loan Association (the mortgagee).

In December, 1969, appellant began demolition work at the building site and, at the request of respondent Terry Nicholson, rer-

outed electric, sewer and water lines across the property. During the late fall and winter months, appellant had also been trying to obtain necessary building permits from the City of Bridgeton (municipality where the property was located). Appellant had to assemble various documents and obtain the approval of the City Planning Commission. On March 6, 1970, appellant received a phone call from the City of Bridgeton informing him that the permits were ready to be picked up.

The next day appellant phoned respondent to tell him the good news. Appellant's version of this conversation was that respondent said that Honey's was having financial problems and to hold up on the permits and that if he (respondent) could not work with Honey's because of this financial situation he would work out something with appellant on another building in view of appellant's effort and time on the job. Respondent's version of the conversation was that he (respondent) was startled to learn that appellant was just getting the building permits, that although he said that it would be impossible to build the building in six weeks (by May 1, 1970), appellant nevertheless said he could, that he would have to call Honey's to find out if they approved, and that appellant should not do anything until he got in touch with him.

On March 10, 1970, appellant received a letter from respondent dated March 7, 1970. The letter stated that respondent was cancelling the construction contract because of appellant's breach of contract. The contract terms called for completion by May 1, 1970, that this was impossible in six weeks and Honey's would not accept occupancy.

Honey's filed a Chapter 11 petition in bankruptcy proceedings on December 16, 1969. The trial court awarded judgment to appellant on Count I, not presented on appeal, for the reasonable value of labor, work and materials furnished for the job and against respondents' counterclaim, and in favor of respondents on Count II, finding that respondents were excused from nonperformance by the doctrine of commercial frustration and appellant's breach.

For reversal, appellant argues that (1) the trial court erred in finding that respondents were excused from nonperformance on the doctrine of commercial frustration in that the rule in Missouri requires an Act-of-God, an act of law—an impossibility and (2) the trial court erred in finding May 1, 1970, as the completion date and that appellant was unable to complete the building by that date. We affirm the judgment for the reasons discussed below.

■■■ The standard of review exercised by this court is that of review of both the law and the evidence as in suits of an equitable nature, Rule 73.01. The supreme court of this state has interpreted this to mean that the judgment of the trial court sitting without a jury should be sustained on appeal unless there is no evidence to support the judgment, the judgment is against the weight of the evidence, the judgment erroneously declares the law, or the judgment erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). In addition the power of the court to set aside the judgment of a trial court on the ground that it is against the weight of the evidence must be exercised "with caution and with a firm belief that the decree or judgment is wrong." *Id.* at 32.

First, we consider appellant's second point. Appellant challenges the sufficiency of the evidence supporting the findings of the trial court. The trial court specifically found that (1) the completion date in the construction contract was May 1, 1970; (2) time was of the essence in this construction contract, and (3) appellant had not diligently performed so as to be able to complete construction by May 1, 1970. On the basis of these facts the trial court concluded that respondents had sufficient grounds to cancel the contract and to excuse them from further performance. Appellant argues that (1) the completion date had been changed to a later date, December 14, 1970, by a second contract between the parties (the construction and disbursing escrow agreement), and that the building could have been constructed by that date and (2) the conclusions of the trial court that appel-

lant did not perform diligently was contrary to the evidence and that appellant could not complete construction by May 1, 1970, was merely an adoption of respondents' unilateral conclusion.

There were two separate contracts entered into which involved the construction of a building by appellant for respondents. The first contract executed November 6, 1969, was a standard construction contract between owner and contractor which incorporated the plans and specifications of Honey's and specified the price and the completion date of May 1, 1970. The second contract, the construction and disbursing escrow agreement, was executed November 14, 1969, by appellant-contractor, respondents-owners, and representatives of the mortgagee, Hamiltonian Federal Savings and Loan Association, and the escrowee, Security Title Company and provided for a construction date of December 14, 1970, which was different from that provided in the first contract.

Appellant argues that where there are two inconsistent contracts that do not expressly provide to what extent the second operates to discharge or as a substitution for the first, that the later contract, if valid, will control, e. g., *Berry v. Crouse*, 376 S.W.2d 107 (Mo.1964); *Ragan v. Schreffler*, 306 S.W.2d 494 (Mo.1957); *Dill v. Poindexter Tile Company*, 451 S.W.2d 365 (Mo.App. 1970). This rule is inapplicable to the facts of this case. In each of the three cases cited the trial court found that the parties intended or contemplated that a later contract would supersede an earlier contract and thus control any inconsistent terms. Each set of contracts had been executed as part of the same transaction and concerned the same subject matter, for example the sale of farm land.

■ In the present case, the two contracts were executed as part of the same transaction, on the same subject matter but containing inconsistent provisions. Even if two instruments are executed as part of the same overall transaction, it does not necessarily mean that those instruments constitute one contract or that one contract has

merged with another, absent some reasonable basis for finding that such merger was the intention of the parties. *Elliott v. Richter*, 496 S.W.2d 860 (Mo.1973); *Four-Three-O-Six Duncan Corp. v. Security Trust Co.*, 372 S.W.2d 16 (Mo.1963). The parties executed the contracts for different purposes and never intended one contract to supersede or substitute for the other. The contracts were really complementary instruments—the construction contract was the basic contract, setting forth the price and completion date. The escrow agreement was the financing agreement which was intended to disburse the construction loan in such a fashion as to protect the under-mortgagee, Hamiltonian Federal. In fact the completion date of December 14, 1970, had been selected by the representative of Security Title only because that was the date that the construction loan was due to expire and the permanent loan was to be put on by the mortgagee.

■ In addition there was evidence to support the conclusion of the trial court that time was of the essence in the construction contract. *Cf. Transport Manufacturing & Equipment Co. v. Fruehauf Trailer Co.*, 295 F.2d 223 (8th Cir. 1961). Appellant was aware of the fact that Honey's required that the building be ready for occupancy by May 1, 1970, because the peak time for bridal business was in May and June.

■ There was also evidence to support the conclusion of the trial court that appellant could not have completed the building by May 1, 1970, and therefore breached the contract. Appellant testified that it would take approximately four months to obtain the necessary permits and complete the building according to the plans and specifications. Appellant experienced some difficulty with the administrative procedures of the City of Bridgeton, but himself contributed partially to the delay. Appellant was unaware that the building permit application required a state architect's seal, approval by the City Engineer and Planning Commission, and certain other documents, including authorization from the state high-

way department for the access onto the highway (Lindbergh Boulevard), all of which required additional time to prepare and assemble. In all appellant required nearly four months to obtain the building permits, leaving only six weeks to build the entire building. Under these circumstances respondents were justified in concluding that appellant would be unable to complete construction by May 1, 1970, and in cancelling the contract.

■ Appellant's first argument challenges the validity of the trial court's finding that this was the proper situation for the application of the doctrine of commercial frustration to excuse respondents from performance. Appellant argues that the appropriate rule in Missouri is the doctrine of impossibility of performance: if a party, by his contract, obligates himself to a performance which is possible to be performed, he must make it good unless his performance is rendered impossible by an Act of God, the law, or the other party. *E. g.,* *Ellis Gray Milling Co. v. Sheppard,* 359 Mo. 505, 222 S.W.2d 742 (1949); *Ward v. Haren,* 139 Mo.App. 8, 119 S.W. 446 (1909); *MFA Mut. Ins. Co. v. Farmers & Merchants Ins. Co.,* 443 S.W.2d 220 (Mo.App.1969); *Missouri Pacific RR v. C.W. Terrell,* 410 S.W.2d 356 (Mo.App.1966); *Stein v. Bruce,* 366 S.W.2d 732 (Mo.App.1963). Missouri courts have narrowly expanded the Act of God exception to include all casualty losses without fault of either party, Mo. Code Comments, 20A Mo.Stat.Ann. § 400.2–613; *Bunge Corp. v. Recker,* 519 F.2d 449 (8th Cir. 1975) (crop losses); *Semo Grain Co. v. Oliver Farms, Inc.,* 530 S.W.2d 256 (Mo.App. 1975) (crop losses), but in general have reaffirmed the impossibility of performance doctrine.

The applicability of the doctrine of commercial frustration presents a question of first impression in Missouri. The Missouri Supreme Court recognized the doctrine but did not apply it to the facts presented in the *Ellis Gray Milling Co.* case. The doctrine has been followed in other states and in the federal courts. See, *e. g., West Los Angeles Institute for Cancer Research v. Mayer,* 366 F.2d 220 (9th Cir. 1966); *Pacific Trading Co. v. Mouton Rice Milling Co.,* 184 F.2d 141 (8th Cir. 1950); *New York Trust Co. v. SEC,* 131 F.2d 274 (2nd Cir. 1942); *Parrish v. Stratton Cripple Creek Mining & Dev. Co.,* 116 F.2d 207 (10th Cir. 1940); *Garner v. Ellingson,* 18 Ariz.App. 181, 501 P.2d 22 (1972); *Autry v. Republic Prod.,* 30 Cal.2d 144, 180 P.2d 188 (1947) (in banc); *Lloyd v. Murphy,* 25 Cal.2d 48, 153 P.2d 47 (1944); *Berline v. Waldschmidt,* 159 Kan. 585, 156 P.2d 865 (1945); *Perry v. Champlain Oil Co.,* 101 N.H. 97, 134 A.2d 65 (1957); *Dorsey v. Oregon Motor Stages,* 183 Or. 494, 194 P.2d 967 (1948); *North American Capital Corp. v. McCants,* 510 S.W.2d 901 (Tenn. 1974); *Beaudoin & Sons, Inc. v. County of Milwaukee,* 63 Wis.2d 441, 217 N.W.2d 373 (1974). See also American Law Institute, Restatement 2d Contracts, § 288; 6 Corbin, Contracts, § 1322 (1962); 6 Williston, Contracts, § 1954 (rev.ed. 1938); Conlen, The Doctrine of Frustration as Applied to Contracts, 70 U.Pa.L.Rev. 87 (1922); Rothschild, The Doctrine of Frustration Or Implied Condition in the Law of Contracts, 6 Temple L.Q. 336 (1932); Note 27 Calif.L. Rev. 460 (1939); Note, Impossibility & The Doctrine of Frustration of the Commercial Object, 34 Yale L.J. 91 (1924); *cf.,* Hurst, Freedom of Contract in an Unstable Economy: Judicial Reallocation of Contractual Risks Under UCC, § 2–615, 54 N.C.L.Rev. 545 (1975–76); Note, Contractual Excuse Based on Failure of Presupposed Conditions, 14 Duquesne L.Rev. 235 (1975–76).

■ The doctrine of commercial frustration was first recognized in England as an excuse for nonperformance in the so-called coronation cases, *Krell v. Henry,* 2 K.G. 740 (1903); *Blakeley v. Muller,* 19 T.L.R. 186 (K.B.); *Clark v. Lindsay,* 19 T.L.R. 202, 88 L.T.R. 198, and has been applied in the United States in a variety of circumstances, *e. g., Marks Realty Co. v. Hotel Hermitage Co.,* 170 App.Div. 484, 156 N.Y.S. 179 (1915) (cancellation of yacht races by war excused nonperformance of advertising contracts). Under the doctrine, if the happening of an event not foreseen by the parties and not caused by or under

the control of either party has destroyed or nearly destroyed either the value of the performance or the object or purpose of the contract, then the parties are excused from further performance. The doctrine of commercial frustration is close to but distinct from the doctrine of impossibility of performance. Both concern the effect of supervening circumstances upon the rights and duties of the parties but in cases of commercial frustration "[p]erformance remains possible but the expected value of performance to the party seeking to be excused has been destroyed by a fortuitous event, which supervenes to cause an actual but not literal failure of consideration." *Lloyd v. Murphy*, 25 Cal.2d 48, 153 P.2d 47, 50 (Cal. en banc 1944).

In *Parrish v. Stratton Cripple Creek Mining & Develop.*, 116 F.2d 207 (10th Cir. 1940), the court applied the doctrine of commercial frustration stating, "where parties enter into a contract on the assumption that some particular thing essential to its performance will continue to exist and be available for the purpose and neither agrees to be responsible for its continued existence and availability, the contract must be regarded as subject to an implied condition that if, without the fault of either party, the particular thing ceases to exist or be available for the purpose, the contract shall be dissolved and the parties excused from performing." 116 F.2d at 209–10. In this case a mining company had contracted with a milling company to process its ore and also contracted with a trucking firm to transport the ore to the mill for processing. The milling company went bankrupt and the mining company transferred its ore to the only other available mill by railroad. The court held that the continued operation of the non-bankrupt mill was an implied condition to the contract between the mining company and trucking firm and because the mill had ceased to operate, the parties were excused from further performance.

Other cases and commentators have approached the doctrine of commercial frustration as a problem of "allocating, in the most generally satisfactory way, the risks of harm and disappointment that result

from supervening events." 6 Corbin, Contracts, § 1322 (1962); *Autry v. Republic Prod.*, 30 Cal.2d 144, 180 P.2d 188 (1947) (in banc); *Lloyd v. Murphy*, 25 Cal.2d 48, 153 P.2d 47 (1944) (in banc); *Dorsey v. Oregon Motor Stages*, 183 Or. 494, 194 P.2d 967 (1948). Justice Traynor in *Lloyd v. Murphy, supra*, stated that the problem in commercial frustration cases was "whether an unanticipated circumstance, the risk of which should not be fairly thrown on the promisor, has made performance vitally different from what was reasonably to be expected." 153 P.2d at 50. If the event was reasonably foreseeable then the parties should have provided for its occurrence in the contract and its absence indicates an assumption of risk by the promisor.

Courts consider the relation of the parties, the terms of the contract and the circumstances surrounding its formation in determining whether the supervening event was reasonably foreseeable. In *Berline v. Waldschmidt*, 159 Kan. 585, 156 P.2d 865 (1945), the court found certain wartime regulations to be reasonably foreseeable by the parties and therefore capable of being covered by the terms of the contract. In *North American Capital Corp. v. McCants*, 510 S.W.2d 901 (Tenn.1974), the court held the failure of government agency officials to approve the site for a proposed savings and loan association as required was reasonably foreseeable and that therefore the defense of commercial frustration was not applicable in an action for rent due. In *West Los Angeles Institute for Cancer Research v. Mayer*, 366 F.2d 220, 225 (9th Cir. 1966) the court stated that it was applying the "more widely accepted view that foreseeability of the frustrating event is not alone enough to bar rescission if it appears that the parties did not intend the promisor to assume the risk of its occurrence." In this view the primary question remains that of assumption of risk of subsequent events rather than whether the "unanticipated circumstance [was] wholly outside the contemplation of the parties." *Lloyd v. Murphy*, 25 Cal.2d 48, 153 P.2d 47, 51 (1944) (in banc).

It is also necessary to establish that there was a total or practically total destruction of the purpose or object of the transaction. In *Lloyd v. Murphy, supra,* the court found that the doctrine was inapplicable because not only were the wartime regulations at issue reasonably foreseeable on the basis of facts commonly known at the time of contract, but also the promisor failed to show that the value of performance under the contract had been destroyed. In the *West Los Angeles Institute* case the entire transaction had been structured around certain tax advantages of sale and lease-back arrangements. When the IRS rejected this tax premise, the selling parties were able to demonstrate that this ruling denied the tax consequences of such arrangements, completely frustrating the purpose of the transaction. See also *William Beaudoin & Sons, Inc. v. County of Milwaukee,* 63 Wis.2d 441, 217 N.W.2d 373 (1974) (where another contractor had removed parts of bridge in process of demolition, item in contract of plaintiff contractor to perform the same task was frustrated by such intervening act).

The doctrine of commercial frustration, like that of impossibility of performance, grew out of the demands of the commercial world to excuse performance in cases of extreme hardship. Sound public policy, while requiring that the doctrine be limited in its application so as to preserve the certainty of contract requires the law to be flexible and equitable in situations where unexpected contingencies operate to make performance valueless and the allocation of contractual risks capricious or fortuitous. See American Law Institute, Restatement 2d, Contracts, §§ 288, 458–60; 20A Mo.Stat. Ann., § 400.2–615 (Vernon's 1975) (Analogy to transactions in goods.)

In this case the proposed building could have been built. But in view of the findings by the trial court that the building had been specifically designed for use as a bridal salon by Honey's and for the sale of bridal fashions and accessories and that it was not suited for other uses, the value of the building as such was destroyed by the supervening circumstance of the bankruptcy of Honey's, the proposed tenant. In addition, appellant was at all times aware of respondents' ultimate purpose in purchasing the property and in construction of the building, its use as a Honey's Bridal Salon. In fact there was some evidence that appellant, interested in construction of Honey's Bridal Salons in this area, had gone to Chicago several times to meet with representatives of Honey's before he ever met respondents and had obtained plans and specifications directly from Honey's. Both parties to the construction contract contemplated construction of a building to be used as a Honey's Bridal Salon.

The other factor to consider in the application of commercial frustration as an excuse of performance is the foreseeability of the supervening event—was the bankruptcy of Honey's a reasonably foreseeable event that should have been provided for in the construction contract? While the possibility of bankruptcy of businesses in general is a foreseeable and all-too-frequent occurrence, the future bankruptcy of a particular company, the continuing existence of which was essential to complete the entire transaction, was not reasonably within the contemplation of the parties at the time of contracting such that the parties would have made provision for such an event. The bankruptcy of Honey's was a fortuitous and unexpected supervening event over which neither party had any control. See *Parrish v. Stratton Cripple Creek Mining & Develop. Co., supra; Dorsey v. Oregon Motor Stages, supra.* The doctrine of commercial frustration "reads into" a contract an implied condition that Honey's would be able to rent the proposed building and use it as a bridal salon. The bankruptcy of Honey's effectively destroyed the value of the building which was suitable only for such use and excused performance by respondents.

In this case it is not inequitable to maintain that appellant had assumed part of the risk in the contract in light of appellant's active participation and knowledge of the entire transaction. Appellant was aware that the construction of the proposed

building was for one purpose only, the long-term lease by Honey's and operation as a bridal salon. Inasmuch as the bankruptcy of Honey's made this objective unattainable and destroyed the value of performance of the contract, the doctrine of commercial frustration will operate to excuse further performance under the contract.

Accordingly, judgment is affirmed.

STEWART and REINHARD, JJ., concur.