**Darl Lynn DUTTON,
Petitioner-Appellant,**

v.

**John Harrison DUTTON, Respondent
Cross-Appellant.**

Nos. 46798, 46867.

Missouri Court of Appeals,
Eastern District.

March 13, 1984.

John C. Livingston, Ellisville, for petitioner-appellant.

Jerry J. Murphy, St. Louis, for respondent cross-appellant.

FRED E. SCHOENLAUB, Special Judge.

Both parties appeal from an order of the circuit court modifying a dissolution decree.

The marriage of the parties was dissolved on July 28, 1980. A separation agreement entered into between the parties was incorporated as part of the decree and the parties were ordered to perform its terms. The agreement provided that it was "not subject to modification except as it pertains to support, custody or visitation of minor children." The agreement was found not unconscionable, and in accordance therewith, the court ordered that petitioner-mother, hereafter referred to as appellant, was to have the care, custody and control of the minor children of the marriage, Cheri, born August 8, 1960, Stephen, born February 14, 1962, Kristen, born November 10, 1964, and Lisa, born February 23, 1970, child support in sum of $50 per week per child and maintenance in the sum of $50 per week for a period of 10 years and 1 month. Respondent-father, hereafter referred to as respondent, was granted reasonable rights of visitation and temporary custody of the minor children.

The separation agreement further provided that appellant was to have the exclusive possession of the family home and should "occupy the said residence with the minor child or children of the parties and shall continue in such occupancy and exclusive possession . . ." until she remarries or moves or the children are emancipated or have completed four years of high school, whichever shall occur first, at which time the house shall be sold and the equity divided equally between appellant and respondent.

Respondent also agreed to be solely responsible for the mortgage payments of $369.92 per month until the real estate is sold and subdivision assessments of $125 annually. Petitioner agreed to pay for routine household and yard maintenance and repairs, and petitioner and respondent agreed to be equally liable for major repair costs.

On April 19, 1982, respondent filed this motion to modify seeking custody of the three minor children, the fourth child, Cheri, having become emancipated. Respondent also asked for possession of the marital residence on the same terms as contained in the original separation agreement or, in the alternative, sale to him by petitioner of her interest in the real estate at a fair market value. Appellant answered denying the allegations of the motion and alleging that the relief sought concerning the residence was barred by the separation agreement and decree and Sec. 452.-360.2, RSMo 1978.

A guardian ad litem was appointed to represent the interests of the minor children, appeared at the hearing on their behalf, and has filed a brief in this proceeding. Stephen attained the age of 21 years after the hearing date, and Kristen, by her choice and with the consent of appellant, will live with her father. At trial, and on this appeal, the only custody issue pertains to the transfer of the custody of Lisa.

Hearing was held, and on December 30, 1982, the court entered its order modifying the decree. The court transferred custody of Stephen, Kristen and Lisa to respondent, and granted appellant reasonable visitation and temporary custody of Stephen and Kristen as the parties may agree, and temporary custody of Lisa on the first and third weekends of each month, for ten days during the summer vacation, for three days during spring break from school and at other reasonable times. The court further held that after February 1, 1983, respondent would no longer be responsible for the mortgage payments or subdivision assessment, and that the marital home should be sold immediately according to the procedure outlined in Paragraph 5 of the separation agreement. Appellant was granted the right to occupy the house until closing.

The court further entered judgments in favor of appellant's attorney in the sum of $2,700, the guardian ad litem, $1,470, and respondent's attorney, $5,700, against appellant and respondent jointly.

On appeal appellant contends the court erred in transferring custody of Lisa in that the decision was not supported by substantial evidence, was contrary to the weight of the evidence and constituted an erroneous application of the law. She further alleges that the court erred in ordering the immediate sale of the marital residence after modifying custody in that pursuant to the terms of the separation agreement, the decree and applicable statutes, the decree of dissolution was a final property order not subject to modification. She also alleges that the trial court erred in assessing court costs and attorney fees equally against the parties, in that under the evidence concerning the financial resources of the parties, and other factors, she should not have been ordered to pay a portion thereof. In his cross-appeal respondent alleges that the court erred in ordering immediate sale of the marital residence after modifying the custody decree in that the original order entered in the decree of dissolution granting appellant possession of the marital home was subject to modification, and the order should have been modified to give him possession. He further alleges that the court erred in failing to order appellant to pay all of the attorney and guardian ad litem fees in that petitioner was more financially able to pay and based upon other relevant factors they would be more appropriately assessed against her. During oral argument, respondent abandoned his appeal of the order of sale of the property.

Review of this case is governed by Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Accordingly, the decree of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, supra, l.c. 32; *Whitenton v. Whitenton*, 659 S.W.2d 542, 546 (Mo.App.1983).

To support a motion to modify custody subsequent to a dissolution decree, however, the moving party carries the bur-

den of showing a substantial change of conditions that necessarily requires a change of custody to serve the best interest of the child. *Ryan v. Ryan*, 652 S.W.2d 313, 315 (Mo.App.1983); *Eastes v. Eastes*, 590 S.W.2d 405, 408 (Mo.App.1979).

Neither party disputes the existence of changed conditions. During the weeks preceding filing of the motion to modify, relationships between appellant and the two older children deteriorated to the point where the children moved from the home and no longer communicate with appellant. In her brief, as in her testimony, appellant objects only to the transfer of custody of Lisa. She expressed the opinion that the family unit had become divided, consisting of "her and Lisa on the one hand and the older children on the other hand." The parties agree that the "real issue" is whether Lisa's welfare and best interest required the change in custody.

The trial court found that appellant had been having trouble effectively communicating with her children, and that this had caused them emotional distress. Appellant argues that she appears to be the victim of rebellious teenagers who succeeded in convincing the trial court that she was the source of all the problems, and that "the trial court was duped and in the process took a child of tender years from her mother much to her detriment."

■ The testimony of appellant and that of the four children conflicted as to appellant's ability to handle the stress of rearing teenage children. A review of the testimony would add nothing to this opinion. It is the prerogative of the trial court to determine the credibility of the witnesses and to accept or reject all, part or none of the testimony. *Whitenton v. Whitenton*, supra. The trial court accepted the children's version of events leading up to the filing of this motion, and that testimony was sufficient to support the modification.

■ Appellant argues that a parent should not lose custody for yelling at her children or for getting emotional, and that there should be some evidence of the "ef-

fects of the emotional distress." Courts are not, however, required to wait for manifestations of harmful consequences before action is taken, *L.H.Y. v. J.M.Y.*, 535 S.W.2d 304, 308 (Mo.App.1976), it being more sensible to change a child's custody when there is a reasonable likelihood of an adverse effect on the child than to wait until the damage is done and then attempt to repair the damage. *Ryan v. Ryan*, supra, l.c. 316.

■ The trial court also considered Lisa's expressed preference, to the guardian ad litem, to live with her father. All of the children expressed the same preference. Appellant contends that the court should have delved into the rationale behind this preference instead of abrogating its decision making function to the child. In our review of this case we proceed on the presumption that the trial court studied all of the evidence thoroughly and decreed custody in the manner it believed would be in the best interests of the child. *McBride v. McBride*, 579 S.W.2d 388, 389–390 (Mo. App.1979).

■ Appellant's willingness to relinquish custody of her other children must also be considered. Absent exceptional circumstances, the children of divorced parents should not be separated. *In re Marriage of Mihalovich*, 659 S.W.2d 798, 801 (Mo.App.1983); *Cochenour v. Cochenour*, 642 S.W.2d 402, 404 (Mo.App.1982). No such circumstances have been shown in this case.

■ Appellant next alleges that the court erred in accelerating the sale of the marital residence contrary to the terms of the separation agreement, the decree, and applicable statutes, contending that such acceleration constituted a modification of the terms of the separation agreement and the original decree. The separation agreement provided that the appellant would occupy the residence "with the minor child or children of the parties" until such time as the petitioner remarried or moved, or the children became emancipated or had completed four years of high school. Appel-

lant contends that the quoted language is not stated in conditional language, but is "merely a statement of the conditions as they existed at the time." This court does not so view the language. It appears clear that the parties intended appellant's possession of the family home to be conditioned on her residing there with the "minor child or children of the parties." This view is further supported in the agreement by the provision that appellant's outside limit of occupancy would be the emancipation of the children.

Provisions of separation agreements granting exclusive possession of the family home to a parent having custody of the parties' children are suggested to Sec. 452.330, RSMo 1978, setting forth as one of the factors to be considered in distributing marital property, "the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children." This can be accomplished by transfer of title to one parent, or as was done in this case, by leaving the parties as tenants in common. Where parties are left as tenants in common provisions such as we have in this case constitute a restriction on their right to partition. *Ray v. Ray*, 629 S.W.2d 651 (Mo.App.1982.)

No statutory provision has been made, however, for instances such as this, when all contingencies are not provided for in the decree or separation agreement. Having ordered a transfer of the custody of the minor children of the parties, to have entered no order concerning disposition of the property would have constituted a modification of the separation agreement and decree, by providing that appellant's occupancy of the home was no longer conditioned on the children also residing there. Such clearly could not have been the intention of the parties when they entered into the agreement. To enforce the agreement as written would require that the house remain empty and unoccupied until Lisa completes four years of high school or is emancipated. It is not reasonable to assume that the parties intended, or that the law would permit, such a result.

Missouri courts have long held that when, by mutual mistake, a contract or other instrument is not expressed in terms that have the force and effect the parties intended equity will correct the mistake and reform the instrument so as to make it speak the real agreement made between the parties. *Walters v. Tucker*, 308 S.W.2d 673, 675 (Mo.1957); *Leimkuehler v. Shoemaker*, 329 S.W.2d 726, 730 (Mo.1959); *Motor Transportation Springfield v. Orval Davis Tire Co., Inc.*, 585 S.W.2d 195, 200 (Mo.App.1979). Reformation has the effect of rewriting an instrument to give force and effect to the actual agreement of the parties, but will be granted only upon clear, cogent and convincing evidence as to the mistake and mutuality thereof and as to the real agreement between the parties, which leaves no room for reasonable doubt. *American Family Mutual Insurance Co. v. Bach*, 471 S.W.2d 474, 477 (Mo.1971); *Sperrer v. Sperrer*, 573 S.W.2d 693, 695 (Mo.App.1978); *Dehner Urban Redev. Corp. v. Dun & Bradstreet, Inc.*, 567 S.W.2d 700 (Mo.App.1978); *Brewer v. Blanton*, 555 S.W.2d 381, 385 (Mo.App.1977). It is not, however, necessary to show that the parties had agreed upon any particular words or language to be used in the instrument but only to show that they agreed to accomplish a particular object by the instrument and that the instrument as executed is insufficient to execute their intention. *King v. Riley*, 498 S.W.2d 564, 566 (Mo.1973); *Bollinger v. Sigman*, 520 S.W.2d 710, 712 (Mo.App. 1975); *Niemeyer v. Stephens*, 515 S.W.2d 65, 66 (Mo.App.1974); *Snider v. Miller*, 352 S.W.2d 161, 165 (Mo.App.1961).

In this case it is clear from the separation agreement itself that the parties intended to provide that their children would have a place to live so long as needed by them, after which the property would be sold and the proceeds divided. The separation agreement is not, however, expressed in terms having that force and effect, and should be reformed to accom-

plish the intent of the parties. Such reformation would provide for sale of the property when the children ceased living in the family home.

In commercial transactions, Missouri courts have also provided that when the happening of an unforeseen event destroys or frustrates the object of a contract, that object is, by retroactive reconstruction of the agreement, added as an implied condition which fails upon the occurrence of the unforeseen event, it being assumed that with foreknowledge the parties would have agreed that performance would be excused. *Jenson v. Haynes*, 633 S.W.2d 154, 156 (Mo.App.1982); *Howard v. Nicholson*, 556 S.W.2d 477, 482–483 (Mo.App.1977), holding that while sound public policy requires that the doctrine of "commercial frustration" be limited in its application so as to preserve the certainty of contracts, the same public policy requires that the law be flexible and equitable in situations where unexpected contingencies operate to make performance valueless and the allocation of contractual risks capricious or fortuitous.

*Howard v. Nicholson*, supra, reviewed the development of the doctrine in England and the United States, holding further that in its application it is necessary to establish that there was a total or practically total destruction of the purpose or object of the transaction and that the supervening event was not reasonably foreseeable. In that case the supervening event was a bankruptcy. The court held that while the possibility of bankruptcy in general is a foreseeable occurrence the future bankruptcy of a particular company was not reasonably within the contemplation of the parties at the time of contracting and that it was a "fortuitous and unexpected supervening event over which neither party had any control."

Although the doctrine has not been applied in domestic relations cases in Missouri, it has been so applied in at least two states. In *Molnar v. Molnar*, 110 Mich. App. 622, 313 N.W.2d 171, 173 (1981), the divorce judgment provided that the marital property of the parties was to be held by them as tenants in common and that it would be occupied by the wife until she remarried or the minor child of the parties attained the age of 18 years, whichever occurred first, whereupon the house would be sold. The 11-year-old son of the parties then died. The court held the application of the doctrine to be both fair and equitable in the circumstances of that case. Noting that, while the doctrine is relatively recent in Anglo-American law, it has become well established in both England and the United States. The court found that the property settlement in that case was for the benefit of the deceased minor child and that this benefit was known at the time the divorce judgment was entered. The court held that the purpose of the judgment was basically frustrated by the death of the child, an event unforeseeable at the time of judgment, and an event which would trigger the sale provisions of the divorce judgment. See also *Spaulding v. Morse*, 322 Mass. 149, 76 N.E.2d 137, 139 (1947).

Here the separation agreement provisions, as they pertain to the family home, were clearly for the benefit of the children of the parties, appellant, with the children, having exclusive possession of the home, respondent making mortgage payments, subdivision assessments, and one-half of the cost of major repairs, thus assuring the Dutton children a place to live. The trial court's order transferring custody of the children from appellant to respondent was a supervening event destroying the purpose of those provisions. Although the possibility of a modification transferring custody of minor children is a foreseeable occurrence, transfer of custody of these children was not reasonably within the contemplation of the parties or the court at the time the separation agreement was executed and the dissolution decree entered. The modification having frustrated the provisions of the separation agreement concerning occupancy of the house, even though brought about by appellant's inability to handle the problems of rearing teenage children, it was such an event as

would trigger, or accelerate, the sale provisions of the agreement.

Other states have arrived at the same result by an even different route. The granting of exclusive possession of the family home to a spouse with custody of children has been held "a supplement to the monetary child support payments," *Lamp v. Lamp,* 81 Ill.2d 364, 43 Ill.Dec. 31, 410 N.E.2d 31, 34 (1980); "a temporary incident of child support," *Cannon v. Morris,* 407 So.2d 372, 373 (Fla.App.1981); and "a vehicle to award the use of habitation, thereby diminishing the monetary payments necessary for shelter for the spouse and children," *Stillings v. Stillings,* 280 S.E.2d 689, 692 (W.Va.1981). In all of those cases the exclusive possession provisions were held to be modifiable as support and maintenance provisions.

Both parties challenge the trial court's assessment of costs and attorney fees equally against both parties. Awards of attorney fees are in the broad discretion of the trial court, and are reviewable on appeal only for abuse. *Nowels v. Nowels,* 637 S.W.2d 163, 166 (Mo.App.1982). Before granting attorney fees the court must consider all relevant factors including the financial resources of the parties. Section 452.355, RSMo 1978; *Bray v. Bray,* 629 S.W.2d 658, 660 (Mo.App.1982). The evidence of the financial resources of the parties in this case does not justify the trial court's award. Appellant's net monthly salary is $613.60 compared to respondent's $2,721.10. Appellant also receives maintenance of $216.66 from respondent. Under these circumstances, neither party should be required to bear the other's attorney fee, and appellant should not be expected to contribute to the payment of the guardian ad litem fee. The order assessing costs and attorney fees should, therefore, be reversed, and respondent ordered to pay the costs and guardian ad litem fee.

The judgment of the trial court is, therefore, affirmed as to transfer of custody and the ordering of the immediate sale of the family home. The judgment of the trial court is reversed as to the award of attorney and guardian ad litem fees and costs and remanded for judgment in accordance with this opinion.

KAROHL, P.J., and A.J. SEIER, Special Judge, concur.