635 F.Supp. 1468 (1986)
Thomas DUDLEY, et al., Plaintiffs,
v.
ST. REGIS CORPORATION, Defendant.
No. 85-1584C(1).
United States District Court, E.D. Missouri, E.D.
June 17, 1986.
*1469 Keith C. Zagar, Dubail, Judge Kilker O'Leary & Smith, St. Louis, Mo., for plaintiffs.
Kenneth R. Heineman, Dale R. Joerling, Coburn Croft & Putzell, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
In this action, plaintiffs seek to recover lost profits due to a breach of a written contract to refurbish a portion of the roof on defendant's factory. The case was tried to the Court sitting without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 52.

FINDINGS OF FACT
1. St. Regis Corporation was, at the time relevant to this lawsuit, a New York corporation. On January 31, 1985, St. Regis was merged into Champion International Corporation, a New York corporation with its principal place of business in Connecticut. Champion is the successor in interest to St. Regis.
2. The Dudleys, d/b/a Basic Roofing Systems, are Missouri residents, with a business office in St. Louis County, Missouri. Basic Roofing has been in existence since May, 1983. For several years prior to that time, Thomas Dudley owned and operated Dudley Roofing.
3. On February 20, 1984, the parties entered into a written contract for the repair/replacement of the southwest quadrant of the roof on St. Regis' envelope plant, located in O'Fallon, Missouri. The contract provided that the work was to be completed between March 1, 1984 and June 1, 1984.
4. The specifications for the roof repair were prepared by St. Regis. The plans called for the installation of a Firestone EPDM single-ply roofing system. St. Regis' major concern was that the Firestone system would be installed according to the manufacturer's specifications. This was to insure that the roof would be covered under Firestone's warranty program.
5. On or about April 29, 1984, a wind and thunderstorm caused substantial damage to the southeast quadrant of the roof. There was no damage to the southwest quadrant. At some time prior to this storm, the southeast section had been refurbished and a Firestone EPDM single-ply system had been installed on that quadrant.[1]
*1470 6. Immediately following the storm, St. Regis informed the Dudleys of the damage to the southeast quadrant of the roof. St. Regis also directed the Dudleys to stop work on the southwest quadrant until defendant's engineering department could evaluate the roofing system.
7. At the time of the work stoppage, plaintiffs did not incur any costs or obligations for labor and materials for the southwest quadrant except for approximately 40 hours expended in preparing the estimate and negotiating the terms of the contract.
8. On August 27, 1984, after evaluating the roofing specifications, St. Regis informed plaintiffs by letter that it was cancelling the contract.
9. The parties stipulated that to perform the work under the contract, the plaintiffs would have expended $55,293.00 for materials, labor, patchwork and other charges. Plaintiffs would have realized $27,707.00 in overhead and profit from the project. The parties further stipulated that said amount of overhead and profit was reasonable for this type of work.

CONCLUSIONS OF LAW
This Court has jurisdiction in this matter under 28 U.S.C. § 1332. Venue is proper within this District.
The parties have stipulated to the written agreement at issue in this case. The terms and conditions section provides, in pertinent part:
11. CANCELLATION: In the event the Owner decides not to proceed with the work, though the Contractor is not at fault and subject to provisions of Section 10. above, the Owner may terminate this agreement at any time upon written notice to the Contractor, thereupon the Owner's only liability shall be to pay to the Contractor all costs for labor and materials incorporated in the work prior to termination and all costs incurred in discharging outstanding obligations of the Contractor at the request of the Owner, and a reasonable overhead and profit, less any previous payments made hereunder or amount of claims of Owner against Contractor.
It is plaintiffs' position that, upon termination of the contract by the defendant, the cancellation provision provides for recovery of the reasonable overhead and profit that would have been earned had the contract been completed.[2] The Court agrees. Under Missouri law, the general rule for damages as a result of a breach of contract is that the non-breaching party is entitled to that which places him in the position he would have been but for the breach. United Industrial Syndicate, Inc. v. Western Auto Supply Co., 686 F.2d 1312, 1316 (8th Cir.1982); Boten v. Brecklein, 452 S.W.2d 86, 93 (Mo.1970); Artcraft Cabinet, Inc. v. Watajo, Inc., 540 S.W.2d 918, 924 (Mo.App. 1976). The amount of damages would include any outlays as well as the anticipated profits the party would have reasonably made from the contract. 686 F.2d at 1316. The cancellation provision in the contract states the general damage rule and provides for recovery of $27,707.00 as a reasonable profit, see Findings of Fact No. 9.
Defendant attempts to argue that the clause "and a reasonable overhead and profit" applies only to the cost of labor and materials already expended at the time of cancellation. The Court finds defendant's position unsupported by the plain language *1471 of the agreement. There is nothing to indicate that the overhead and profit clause is restricted only to costs already incurred at the time of the cancellation. Moreover, such an interpretation would be a significant departure from the general rule on damages. The Court finds nothing to support such a reading of the contract. Accordingly, the Court rejects defendant's restrictive reading of the agreement.
Defendant raises, as an affirmative defense, the argument that its obligations under the written contract were excused under the doctrine of commercial frustration. In Howard v. Nicholson, 556 S.W.2d 477, 481-82 (Mo.App.1977), the court explained the doctrine as follows:
Under the doctrine, if the happening of an event not foreseen by the parties and not caused by or under the control of either party has destroyed or nearly destroyed either the value of the performance or the object or purpose of the contract, then the parties are excused from further performance. The doctrine of commercial frustration is close to but distinct from the doctrine of impossibility of performance. Both concern the effect of supervening circumstances upon the rights and duties of the parties but in cases of commercial frustration "[p]erformance remains possible but the expected value of performance to the party seeking to be excused has been destroyed by a fortuitous event, which supervenes to cause an actual but not literal failure of consideration." Lloyd v. Murphy, 25 Cal.2d 48, 153 P.2d 47, 50 (Cal. en banc 1944).
See also Restatement (Second) of Contracts § 265 (1979). Defendant argues that the storm damage to the southeast quadrant, see Findings of Fact No. 5, destroyed the value of the replacement roof for the southwest quadrant, thus excusing further performance by either party. The Court cannot agree.
As an initial matter, the Court notes that this is not a case where there was a complete destruction of the building upon which the work was to be done. In such a case the obligations of both parties would be discharged. See 18 S. Williston on Contracts § 1965 (3d Ed.1978). In Howard v. Nicholson, supra, for example, the court found the doctrine of commercial frustration operated to excuse non-performance by the defendants on a construction contract. Defendants had entered into a contract for the construction of a building by plaintiff. Prior to contracting, the defendants signed a twenty-year lease for the proposed building, which was to be used as a bridal salon. After construction had begun, the prospective occupant of the building filed bankruptcy. Having lost the proposed tenant, defendants cancelled the contract. The trial court awarded plaintiff the reasonable value of the labor and materials furnished but denied his claim for lost profits. On appeal, the court held that the bankruptcy of the proposed tenant "effectively destroyed the value of the building which was suitable only for such use and excused performance by the respondents." 556 S.W.2d at 483. The Howard case is easily distinguishable from the case at bar. In Howard, the building was designed for use as a bridal salon for a specific tenant. In addition, the court noted that the building was not suited for other uses and that the plaintiff was, at all times, aware of defendants' ultimate purpose in constructing the building. Under these facts, the court found that the value of the building was destroyed by the supervening circumstance of the bankruptcy of the proposed tenant. Id.
In the case at bar, there was only damage to a portion of the roof which had already been refurbished with a new Firestone roof. The entire roof, including the portion to be re-roofed by the plaintiffs, remained intact and still in need of a new covering for the southwest quadrant. Clearly, the essential purpose of the contract remained. "A promise will not be discharged, however, because the performance promised in return has lost value on account of supervening fortuitous circumstances unless they nearly or quite nearly destroy the purpose both parties to the *1472 bargain had in mind." S. Williston on Contracts § 1954 (3d Ed.1978). Moreover, as with any contract of this nature, defendant necessarily assumes some risk that its design may be inadequate. The fact that defendant later learns that the value of its design is less than anticipated does not rise to the level of commercial frustration. Public policy requires that the doctrine of commercial frustration "be limited in its application so as to preserve the certainty of contracts." Dutton v. Dutton, 668 S.W.2d 585, 591 (Mo.App.1984).
Finally, the Court finds it significant that it was defendant's employees who designed the specifications to be followed by plaintiffs. See Findings of Fact No. 4. Defendant does not attempt to explain why the specifications could not be changed to correct any deficiencies in the design. It is not unforseeable that a change in the specifications would be necessary either before or during the roof repair work. Instead of attempting to correct the deficiency, defendant cancelled the contract. The Court finds that defendant's resulting obligations under the cancellation provision of the contract are not excused under the doctrine of commercial frustration.
Accordingly, having rejected defendant's affirmative defense, the Court finds defendant liable to plaintiffs in the amount of $27,707.00. Each side shall bear its own cost in this matter.
NOTES
[1] The only difference between the system installed on the southeast quadrant and that proposed for the southwest quadrant is the addition of a one-half inch protection board to be installed between the insulation and the EPDM membrane. The addition was due to a change in Firestone's requirements. The parties are in dispute over the significance of the change in the specifications. Plaintiffs claim the change was to improve adhesion and to prevent deterioration. Defendant claims the change would have no effect on either the adhesion or deterioration characteristics of the roof. In resolution of the issues in this case, the Court finds it unnecessary to determine whether or not the improvements would have prevented the storm damage feared by the defendant.
[2] The defendant does not dispute plaintiffs' claim that they were ready, willing and able to perform the contract as written. Accordingly, plaintiffs have met the requirement that they tender performance prior to their seeking recovery on the contract. Navato v. Sletten, 560 F.2d 340, 346 (8th Cir.1977); Miran Investment Co. v. Medical West Building Corp., 414 S.W.2d 297, 302 (Mo.1967).