No. 36,303

LEE BERLINE, *Appellant,* v. H. WALDSCHMIDT and ERCELL WALD-SCHMIDT, Husband and Wife, *Appellees.*

(156 P. 2d 865)

Opinion filed March 10, 1945.

*J. B. McKay,* of El Dorado, argued the cause for the appellant.

*Kirke W. Dale,* of Arkansas City, argued the cause, and *Albert Faulconer* and *Donald Hickman,* both of Arkansas City, were on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This was an action in which plaintiff sought to extend the terms of a mineral deed, which would otherwise expire, for such period as war-time regulations make it unlawful to drill a test well on real estate covered by the terms of the instrument under which he acquired his interest.

The petition alleges that on May 27, 1939, the defendants, who were then the owners of the real estate therein described, executed and delivered a mineral deed conveying an undivided one-half interest in and to all of the oil, gas and other minerals in and under,

and that might be produced from a five-acre tract of land, describing it, located in Cowley county, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring for oil and gas and other minerals for a term of five years from date thereof, and as· long as oil and/or gas were produced from the premises, or the property was being developed or operated; that subsequent to the execution of such instrument the plaintiff acquired and became the owner of the interest so conveyed together with all rights thereunder and incidents thereto. It then states that on May 27, 1939, the five-acre tract was subject to a valid oil and gas lease, and that since the deed was made subject to the terms thereof the grantee therein and his successor in interest had no right to develop or explore the five acres for oil and gas purposes until subsequent to its expiration on November 15, 1943. It further states that prior to that date and on December 23, 1941, it became and still is unlawful under Federal laws and regulations to secure or use material for the drilling of a well on a tract containing less than forty (later changed to twenty) surface acres; that either— and the averments are not definite on the point—subsequent to the expiration of the lease or in contemplation of that situation plaintiff made proper and reasonable application for an exception permitting him to drill a well on the tract, which was denied, and that he also attempted to consolidate it with adjacent premises in order to create a twenty-acre drilling unit, but his efforts in that respect—although other owners in the proposed consolidation area were willing—were frustrated because defendants refused to join in the proposed plan; that defendants have at all times refused and now refuse to so consolidate such land with other lands, with the result they have made it impossible for plaintiff to create a drilling unit of such character. It next states that since the execution of the mineral deed there has never been a time the grantee therein or his successor, the plaintiff herein, could lawfully drill a well on the land covered by its terms notwithstanding the fact producing wells were drilled and completed in the nearby vicinity, that it now lies between two producing oil wells which were drilled and completed after its execution and that it has become apparent oil and gas in paying quantities underlies and can be procured from it. The petition further alleges that by reason of the facts therein set forth it has been and is legally impossible for plaintiff to bring about or procure the extension of the primary term of the deed, and that unless such term is extended

or the running thereof suspended plaintiff will have been deprived of his property without compensation; that plaintiff is ready, willing and able to drill a well on the five-acre tract to test production as soon as one can be lawfully drilled thereon; that he is also ready and willing, and offers and agrees to consolidate his interest in the tract for that purpose. It then states plaintiff has no adequate remedy at law and will suffer great and irreparable loss unless the primary term of such mineral conveyance is extended, or the running thereof suspended, until such time as a well can be lawfully drilled on the premises, and prays for judgment resulting in relief of that character.

What we have just related is a summary of the essential facts to be found in the body of the petition. Attached to that pleading and made a part thereof was a copy of the mineral deed on which the plaintiff relied for his title. Most of the important terms of the instrument were pleaded and will not be repeated. However, on examination there appear several provisions not mentioned and to which reference should be made in order that the issues involved on appeal may be clearly presented. One such provision reads:

"It is understood and agreed that none of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said grantee and in the event that the above described lease for any reason becomes cancelled or forfeited then and in that event an undivided none of the lease interests and all future rentals and bonuses on said land for oil, gas and other mineral privileges shall be owned by the said grantee, now owning ½ of all .oil, gas and other minerals in and under said lands, together with ½ interest in all future events."

Another provides:

". . . and grantors do hereby bind *their*selves, their heirs, executors and administrators to warrant and forever defend all and singular the said property unto said grantee herein, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, . . ."

For the same reason it should perhaps be also stated that the petition was filed May 25, 1944, two days before the plaintiff, under the terms and provisions of the mineral deed, would have lost all right, title and interest in and to the five-acre tract in question.

The defendants demurred to the petition on the ground it failed to state facts sufficient to constitute a cause of action. In due time the trial court sustained the demurrer. Thereupon the plaintiff served notice of appeal and now submits the propriety of that ruling for appellate review.

While the general question raised by the appeal is, of course, the sufficiency of allegations of the petition, the specific question for determination is whether a court of equity can and should extend or suspend the running of the term of a mineral deed which would otherwise expire during the period that war-time regulations make the drilling of a test oil well unlawful.

The substance of appellant's contentions are that since, pursuant to the Second War Powers Act and administrative orders promulgated thereunder, it became unlawful to drill an oil well on the land described therein, the application of the equitable principles of the doctrine of commercial frustration requires the court to suspend the operation of the contract and extent the period of time fixed by its terms for the termination of appellant's right, title and interest in and to the tract thereby conveyed until some future and indeterminable date subsequent to the time when such government regulations are rescinded and will permit the lawful drilling of an oil well on the five-acre tract in question.

It will not be necessary, and we are not disposed, to here indulge in a general discussion of the doctrine which, it can be said, ordinarily applies to excuse payment by the defaulting party where the object or purpose of a contract is frustrated or its enjoyment prevented by law, or to attempt to detail the many and varied circumstances and conditions under which it may become applicable. Those interested in pursuing its intricacies and those of the older legal principles of impossibility of performance with which it is complementary will find the subjects discussed at great length, and numerous citations of cases dealing with them, in the following well-known legal textbooks, treatises and digests: 153 A. L. R. Anno. 1417, supplementing 137 A. L. R. 1199, 147 A. L. R. 1273, 148 A. L. R. 1382, 149 A. L. R. 1447, 150 A. L. R. 1413, 151 A. L. R. 1447 and 152 A. L. R. 1447; 3 A. L. R. Anno. 21, supplemented by 9 A. L. R. Anno. 1509; Am. Dig. System, Contracts, Key No. 309; Restatement, Contracts, §§ 454 to 469, incl.; 6 Williston on Contracts, §§ 1931 to 1949, incl.; 17 C. J. S. Contracts 946, § 459 et seq. and 12 Am. Jur., Contracts 927, § 361 et seq.

For our purposes it can be stated the question of whether the doctrine of commercial frustration is applicable depends upon the particular circumstances and conditions of each case as it is presented for consideration. So, also, it can be said it is predicated upon the fundamental premise of giving relief in a situation where

the parties could not reasonably protect themselves by the terms of their contract against contingencies which later arose, and that it never applies to give such relief where the risk of the event that has supervened to cause the alleged frustration was reasonably foreseeable, and could and should have been anticipated by the parties and provision made therefor within the four corners of the agreement which it is contended should be supplemented through operation and application of the doctrine. If the events relied upon as bringing the doctrine into force and effect appear to have been reasonably foreseeable and controllable by the parties, they may not invoke its principles as a defense to escape their obligations and the contract is enforceable in accordance with the provisions to be found therein.

With the rule as we have just stated it, can it be held, from an examination of the petition and the conditions and circumstances properly inferable from its language, that there is room in the instant proceeding for application of the doctrine? Turning to the petition we find that the mineral deed under which appellant acquired his interest, and which he now contends should be supplemented by reading into it something that is not to be found there, was executed on May 27, 1939. The pleading does not state, but we must assume, that appellant acquired his title subsequent to that date. At that time events transpiring in Europe were of such character that it was not only reasonable to foresee that within a short space of time the nations of that continent were once again to become engaged in a great conflict, but unreasonable to contemplate that that situation was not inevitable. True, it may be suggested, that this nation was not then involved in any course of action which would draw it into that controversy, but it cannot be denied that the pages of history dealing with the events which caused us to become involved in World War I were of such nature as to put contracting parties on guard with respect to the possibilities of another world-wide combat. In the face of such facts we do not think it can be said the possibility of war was not reasonably foreseeable. But that is not all. On the date of the execution of the mineral deed there was in force and effect chapter 227 of the Laws of 1939 (now G. S. 1943 Supp. 55-602 to 55-609 [b] incl.), regulating the production of oil in Kansas, and giving the corporation commission of the state authority to make and enforce rules, regulations and orders in connection therewith. Prior to that time and as early as 1931, Kansas had recognized the necessity of conservation and elimination of

waste, and from that time down to 1939 comprehensive legislation had been enacted regulating and insuring the production of crude oil and natural gas without waste. The legislature had also ratified, approved and confirmed the interstate compact to conserve oil and gas (Laws 1939, ch. 228, now G. S. 1943 Supp. ch. 55 art. 8), which expressly bound the state within a reasonable time to enact laws and continue in force and effect legislation theretofore enacted which, among other things, prevented the drilling, equipping, locating, spacing or operating of wells in such manner as to bring about physical waste of oil or gas or loss in the ultimate recovery thereof. It should also be noted that prior to the effective date of such legislative enactments the right of a governmental agency to regulate the spacing of oil wells had been recognized and definitely determined. (See *Marrs v. City of Oxford*, 32 F. 2d 134, 280 U. S. 573, 74 L. Ed. 625, 67 A. L. R. 1336.) So, at that time, it must be concluded the appellant knew, or if he did not know he was bound to know, that the laws of Kansas·permitted the spacing of oil wells in a manner similar to that subsequently provided for by the federal legislation which resulted in the situation described in his petition. It therefore cannot be said that the grantee in the mineral deed could not have reasonably foreseen the spacing of oil wells so far as the state is concerned. Moreover, and without laboring the question further, in view of the conditions in Europe, to which we have heretofore referred, we believe the same must be said of the situation with respect to contemplation by the parties of the power the federal government might and could exercise in the event of war or some other circumstance which congress might determine justified and required intervention by the government in order to protect and preserve national resources.

Notwithstanding the existence of the condition and circumstances to which we have just referred and the knowledge possessed by the parties with respect thereto, they proceeded to enter into a contract expressly providing for the termination of all rights thereunder at the· expiration of· five years and wholly devoid of any provisions which would give them relief in the event of the happening of the contingency relied upon by appellant as now suspending its expiration· date. If they desired to avoid that contingency, or any· others which they could have reasonably foreseen or controlled, they·,easily might have made provision therein for the event of their happening. By failing to do so we believe they assumed the risks incident

thereto, and are not now in a position to avail themselves of the benefits of the doctrine of commercial frustration or to insist that the courts take action which, to all practical intents and purposes, would result in the making of an entirely different contract.

Without supplementing the terms of the contract through operation of the doctrine—which we have determined cannot be done—the petition fails to state a cause of action since it is based upon a mineral deed the terms of which expired by its own provisions two days after the action was instituted.

What we have just stated disposes of this lawsuit. We cannot, however, refrain from giving consideration to another contention advanced by the appellant.

Aside from assumption of risk of what turned out to be the contingency which, it is urged by him, defeated complete consummation of the agreement in accordance with its terms, we doubt—without basing our decision on the proposition—if the real and actual object of the contract was in fact frustrated. That situation is, of course, a prerequisite to relief under the doctrine. It is argued that the condition making it illegal to drill a well on the five-acre tract deprived appellant of the right, for approximately six months out of the five-year term contemplated by the parties, to enter upon the land and drill a well. A fair analysis of the petition in our opinion leads to the conclusion the primary object of the grantee in the original instrument was to acquire an undivided one-half interest in the oil produced from the acreage, and that the most that can be said to have been within the contemplation of the parties at the time it was executed was the execution of a new lease to accomplish that purpose in the event the one then in force and effect became cancelled or forfeited for any reason. If not, why the reference in the instrument to a new lease and the provisions that none of the rentals were to be the property of the grantees. To us, the appellant's argument that he proposed to enter upon such a small tract for the purpose of drillin a well smacks of a desire to use the federal regulation as a means of mending his hold after it became apparent his rights under the conveyance were about to expire without his having been able to realize anything from his investment.

Counsel for the parties with their customary diligence have cited numerous decisions having to do with various phases of the doctrine of commercial frustration and have fortified their contentions regarding its application with sound and plausible arguments. Both

decisions and contentions have been carefully examined and considered. They are not discussed here for the simple reason our conclusion precludes application of the doctrine and hence makes them inapplicable.

The judgment is affirmed.

BURCH, J. (concurring): I concur in the result and base my concurrence on that part of the opinion setting forth that statutory provisions and court decisions were such at the time of the execution of the instrument as to have caused the purchaser to contemplate the probability of regulations affecting the drilling of oil wells on small tracts.