**BUTLER MANUFACTURING COMPANY, INC., et al., Plaintiffs,**

v.

**AMERICOLD CORPORATION, et al., Defendants.**

**No. 92–2118–JWL.**

United States District Court, D. Kansas.

Jan. 19, 1994.

Thomas R. Buchanan, Mark D. Hinderks, Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, David S. Evinger, Andrew W. Horstman, Martin R. Lueck, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for Butler Mfg. Co.

Michael G. Norris, Payne & Jones, Chtd., Overland Park, KS, Mark D. Hinderks, Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, David S. Evinger, Andrew W. Horstman, Martin R. Lueck, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for Associated Wholesale Grocers, Inc.

Mark D. Hinderks, Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, David S. Evinger, Andrew W. Horstman, Martin R. Lueck, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for Allendale Mut. Ins. Co.

Paul H. Niewald, Niewald, Waldeck & Brown, Kansas City, MO, Lynn W. Hursh, Douglas R. Richmond, Robert G. Mooney, Armstrong, Teasdale, Schlafly & Davis, James S. Kreamer, Baker, Sterchi & Cowden, Mary M. Kenney, William H. Sanders, Floyd R. Finch, Jr., Katherine S. Bunn, Brian J. McGrath, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, James M. Yeretsky, Patrick J. Doran, Niewald, Waldeck & Brown, Overland Park, KS, for Americold Corp.

Richard C. Wallace, Evans & Mullinix, P.A., Lenexa, KS, for Magnolia Beef Intern.

Paul H. Niewald, Niewald, Waldeck & Brown, Lynn W. Hursh, Douglas R. Richmond, Robert G. Rooney, Armstrong, Teasdale, Schlafly & Davis, Mary M. Kenney, William H. Sanders, Floyd R. Finch, Jr., Katharine S. Bunn, Brian J. McGrath, Black-well, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for Americold Services Corp.

Michael F. Saunders, J. Bradley Leitch, Spencer, Fane, Britt & Browne, Kansas City, MO, for Jianas Bros. Packaging Co.

Robert A. Babcock, Phillip C. Rouse, James S. Kreamer, Baker, Sterchi & Cowden, Kansas City, MO, Julius Denenberg, Charles R. Tuffley, Todd B. Denenberg, Dennis L. Hearon, Denenberg, Tuffley & Jamieson, Southfield, MI, for Starting Right Co., Atlantic Mut. Ins. Co., Allianz Ins. Co., St. Paul Fire and Marine Ins. Co., J.C. Benage, Dennis A. Brown, Lawrence H. Kruse, James W. McKinney, Erwin Oetting, Jr., John F. Peterson, Robert A. Yeckel, Sav. and Loan Data Corp., Inc., Federal Ins. Co., Great Northern Ins. Co., Glenn Falls Ins. Co. and Metmor Financial Inc.

Paul H. Niewald, Niewald, Waldeck & Brown, Lynn W. Hursh, Douglas R. Richmond, Robert G. Rooney, Armstrong, Teasdale, Schlafly & Davis, Mary M. Kenney, Floyd R. Finch, Jr., Katherine S. Bunn, Brian J. McGrath, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for Americold, Inc.

Edward J. Barbosa, Knipmeyer, McCann, Smith, Manz & Gotfredson, Edward L. Smith, Kansas City, Mo., for Fleming Companies Inc., Pierce Trading Corp., Twin City Foods Inc., Midland Foods Distribution, Inc., Kemper Lloyd's Ins. Co., Institute of London Underwriters, Lloyd's of London, Marcus Phillips and Hanover Kansas City, Inc.

F. Carlton King, Jr., Chad A. Schultz, Ford & Harrison, Atlanta, GA, Michael R. Lawless, Mission, KS, for Meyners–Robinson Co., Inc.

Margaret A. Gallagher, Andrew K. Haynes, Sinclair, Sawyer, Thompson & Haynes, P.C., Kansas City, MO, Gary E. Cripe, Catherine M. Graham, Cripe & Graham, Upland, CA, for Earth Elements Inc.

Daniel Q. Harrington, Cozen and O'Connor, Philadelphia, PA, Margaret A. Gallagher, Sinclair, Sawyer, Thompson & Haynes, P.C., Kansas City, MO, for Fireman's Fund Ins. Co.

Richard N. Bien, James A. Durbin, Swanson, Midgley, Gangwere, Clarke & Kitchin,

William J. Gotfredson, Edward J. Barbosa, Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, MO, Craig T. Kenworthy, Swanson, Midgley, Gangwere, Clarke & Kitchin, Overland Park, KS, for Safeway Inc.

Michael Hufft, Steven J. Quinn, Merrick, Baker, Fox, Hufft & Strauss, Ronald L. Holt, Todd P. Graves, Bryan Cave, Kansas City, MO, Thomas J. Bath, Jr., Bryan Cave, Overland Park, KS, for Food Barn Stores Inc.

Scott Christopher Long, Payne & Jones, Chtd., Overland Park, KS, for Hartford Cas. Ins. Co. and QHC Inc.

Daniel Q. Harrington, Cozen and O'Connor, Philadelphia, PA, Margaret A. Gallagher, Sinclair, Sawyer, Thompson & Haynes, P.C., Kansas City, MO, for Principal Mut. Life Ins. Co.

Richard N. Bien, James A. Durbin, James H. McLarney, Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, MO, Craig T. Kenworthy, Swanson, Midgley, Gangwere, Clarke & Kitchin, Overland Park, KS, for Commerce Bank of Kansas City, N.A.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

#### I. Introduction

This consolidated action arises out of a fire that occurred at an underground warehouse facility owned and operated by defendants Americold Corporation and Americold Services Corporation ("Americold"). The plaintiffs in the various cases consist of corporations who had stored foodstuffs, records and other goods which were damaged in the fire and various insurers of those goods. In addition, several of the plaintiffs have brought suit against Safeway, which leased space in the warehouse from Americold and subsequently entered into agreements to allow those plaintiffs to store goods in its leased space. The matter is currently before the court on cross-claim defendant Safeway's motion for summary judgment on Americold's cross-claim (Doc. # 27 in case no. 92–2458–JWL).

The vast majority of claims have been brought in the consolidated actions against Americold by plaintiffs who owned goods which were damaged in the fire and had been stored in Americold's warehouse pursuant to record storage contracts or warehouse receipts executed between the plaintiffs and Americold. The court has issued a multitude of orders ruling on the enforceability of contractual damage limitation provisions in those factual situations.

Americold's cross-claim which is at issue in the present motion presents a completely different factual situation and set of issues. Safeway leased space in Americold's warehouse pursuant to a leasehold contract executed between Americold and Safeway. Safeway subsequently stored goods in the leased space and additionally entered into agreements with other parties to store goods in the space Safeway had leased from Americold. Several parties stored goods in Safeway's leased space pursuant to warehouse receipts executed between Safeway and those other parties.

Following the December 28, 1991 fire that occurred in the Americold warehouse, Safeway discontinued its lease payments to Americold on the space it had leased in the Americold warehouse. In its cross-claim, Americold contends that Safeway remained obligated to make its lease payments following the fire, and that Safeway is liable to Americold in an amount in excess of $350,000.00 for unpaid lease payments from the time of the fire until the expiration of the lease on January 31, 1993. In its motion for summary judgment, Safeway contends that it was not obligated to make the lease payments based on the doctrines of commercial impracticability and commercial frustration and various contractual provisions in the lease. Following a thorough review of the briefs filed by the parties and relevant authorities, the court finds that Safeway is not entitled to relief under the doctrines of impracticability or frustration of purpose and that material questions of fact otherwise prevent the granting of summary judgment at this time. Accordingly, Safeway's motion for summary judgment is denied.

#### II. Summary Judgment Standards

■ A motion for summary judgment gives a judge an initial opportunity to assess

the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

■ The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554.

### III. Discussion

■ Safeway argues that it should be discharged from its obligation to make lease payments because of supervening commercial impracticability and frustration caused by the warehouse fire and subsequent embargo of food by state and federal health agencies. Although some Kansas cases treat the doctrines of impracticability and frustration as if they are one, it is clear that they are based on different assumptions and are comprised of different elements. *See Columbian Nat. Title Ins. v. Township Title Services, Inc.*, 659 F.Supp. 796 (D.Kan.1987). However, under either doctrine, the determination of whether the doctrine operates to excuse the defendant's breach is one of law rather than fact and for the court's rather than the jury's determination. *Id.*

■■ The court finds that the doctrine of impracticability is not applicable to the factual situation in the present case. The general rule concerning discharge by supervening impracticability is stated in the *Restatement (Second) of Contracts* § 261 (1981):

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

In the present case, Safeway's performance regarding the lease contract consisted of its obligation to make lease payments. The fire in the Americold facility and subsequent embargo did not make performance by Safeway impracticable. Simply put, the fire and subsequent embargo did not affect Safeway's ability to make its lease payments and thus perform its obligations under the lease. As a leading commentator has stated, the doctrine of impracticability in general operates to the advantage of parties that are bound to furnish goods, land, services or some similar performance, while the doctrine of frustration of purpose operates to the advantage of parties that are to pay money in return for those performances. *See* E. Allan

Farnsworth, Contracts § 9.7, p. 720 (2nd ed. 1990).

The court next focuses on Safeway's argument that its breach is excused under the doctrine of commercial frustration. The general rule as to discharge by supervening frustration is stated in the *Restatement (Second) of Contracts* § 265 (1981):

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

The doctrine of commercial frustration has been adopted by Kansas courts. A thorough analysis of the doctrine is contained in *Columbian Nat. Title Ins. v. Township Title Services, Inc.*, 659 F.Supp. 796 (D.Kan.1987) which provides that:

> The doctrine of commercial frustration applies to excuse a breach of contract only "where the object or purpose of a contract is frustrated or its enjoyment prevented by law." *Berline v. Waldschmidt*, 159 Kan. 585, 588, 156 P.2d 865, 867–68 (1945). The doctrine is predicated upon the premise that the breaching party could not reasonably protect itself against contingencies that later arose. *Id.* at 588–89, 156 P.2d at 868. Consequently, the doctrine never applies "where the risk of the event that has supervened to cause the alleged frustration was reasonably foreseeable, and could and should have been anticipated by the parties and provision made therefor within the four corners of the agreement." *Id.* at 589, 156 P.2d at 867. If the supervening event appears to have been reasonably foreseeable and controllable by the parties, the breaching party may not invoke the defense and the contract is enforceable. *Id.* at 589, 156 P.2d at 868.

The court notes that although the doctrines of frustration and impracticability are similar, frustration is not a form of impracticability of performance. Under the doctrine of frustration, performance remains possible, but is excused because a fortuitous event supervenes to cause a failure of the consideration or a practically total destruction of the expected value of the performance. 17 Am.Jur.2d *Contracts* § 402 at 848. The object so frustrated "must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense." *Restatement (Second) of Contracts* § 265 Comment a.

*Id.* at 804.

In analyzing the doctrine of commercial frustration, Kansas courts have been extremely strict in determining whether a supervening event was reasonably foreseeable and controllable by the parties. The Kansas Supreme Court has stated that the applicability of the commercial frustration doctrine is "predicated upon the fundamental premise of giving relief in a situation where the parties could not reasonably protect themselves by the terms of their contract against contingencies which later arose, and that it never applies to give such relief where the risk of the event that has supervened to cause the alleged frustration was reasonably foreseeable, and could and should have been anticipated by the parties and provision made therefor within the four corners of the agreement which it is contended should be supplemented through operation and application of the doctrine." *Berline v. Waldschmidt*, 159 Kan. 585, 589, 156 P.2d 865 (1945).

*Berline* involved a mineral deed to develop oil and gas wells on a five acre tract of property which contained a provision that the plaintiff's right to develop the land would terminate if the property had not been developed within a five year period. The deed, which was executed on May 27, 1939, was made subject to a prior valid oil and gas lease, which did not expire until November 15, 1943. Prior to that date, on December 23, 1941, it became unlawful under federal laws and regulations to secure or use material for the drilling of a well on a tract containing less than forty acres. *Id.* at 586, 156 P.2d 865.

The plaintiff argued that since, pursuant to the wartime regulations, it became unlawful to drill an oil well on the land covered by the

mineral deed, the application of the equitable principles of the doctrine of commercial frustration required the court to suspend the operation of the contract and extend the period of time for plaintiff to develop the mineral rights until a time when the government regulations were rescinded. *Id.* at 588, 156 P.2d 865. The court found that the doctrine was inapplicable due to the foreseeability of the regulatory event which caused plaintiff's contractual bargain to be frustrated. Basically, the court found that even though at the time the deed was executed on May 27, 1939 the war in Europe had not even begun, the plaintiff should have had the foresight to see that the nations of Europe would soon be engaged in war, that the United States would inevitably be drawn into the conflict, and that the federal government would use its regulatory powers to preserve natural resources in such a manner as to prevent plaintiff from developing oil wells on the land subject to his mineral deed. *Id.* at 589–90, 156 P.2d 865.

In addition to the near omniscience regarding the possibility of supervening events that the *Berline* court indicates should be attributed to the contracting party seeking to invoke the doctrine of commercial frustration, every other reported Kansas decision this court has reviewed discussing commercial frustration has disallowed the doctrine based on the foreseeability of the supervening event. *See State ex rel. Stephan v. Kansas Racing Com'n,* 246 Kan. 708, 792 P.2d 971 (1990) (litigation which caused delay in obtaining financing for racing track was foreseeable); *Freeto v. State Highway Commission,* 161 Kan. 7, 166 P.2d 728 (1946) (finding that government restrictions on use of structural steel during wartime was foreseeable); *Sunflower Elec. Co-op., Inc. v. Tomlinson Oil Co., Inc.,* 7 Kan.App.2d 131, 638 P.2d 963 (1981) (finding that lack of sufficient gas reserves was foreseeable). *See also Columbian Nat. Title Ins. v. Township Title Services, Inc.,* 659 F.Supp. 796 (D.Kan.1987) (economic risk that plaintiff's title insurance policies would become unmarketable was foreseeable).

Given the prevailing Kansas authority, this court finds that the risk that Safeway's leased premises may become untenable due to damage from a fire in or about the leased premises was reasonably foreseeable, and therefore should have been anticipated by Safeway with a provision made therefor in the leasehold contract. Indeed paragraph 8 of the leasehold contract, which is discussed later in this opinion, deals with the parties' respective obligations in the event the premises become untenable as the result of fire or other casualty. The court also finds that the resulting embargo of potentially damaged foodstuffs by regulatory agencies was reasonably foreseeable. The smoke damage to the products occurred as a direct and natural result of the fire in the warehouse, which fire was a foreseeable event. The parties to this transaction should have been well aware that various governmental agencies are concerned with regulating the safety of food products distributed to consumers, and that in the event a question should arise as to the safety of food products, an embargo on potentially tainted food by these regulatory agencies would be possible. Therefore, based on this court's finding that the claimed supervening events were reasonably foreseeable, and therefore should have been anticipated by Safeway with provisions made therefor in the leasehold contract, the court finds that Safeway's motion for summary judgment based on the doctrine of commercial frustration should be denied.

Safeway's final argument is that it should be discharged from its obligation to make payments on the lease based on paragraph 8 of the leasehold contract, which provides as follows:

8. DAMAGE BY CASUALTY: In case, during the term created or previous thereto, the premises hereby let, or the building of which premises are a part, shall be destroyed or shall be so damaged by fire or other casualty, as to become untenable, then in such event, at the option of the LESSOR, the term hereby created shall cease, and this lease shall become null and void from the date of such damage or destruction and the LESSEE shall immediately surrender said premises and all interest therein to LESSOR, and LESSEE shall pay rent within said term only

to the time of such surrender; provided, however, that LESSOR shall exercise such option to so terminate this lease by notice in writing delivered to LESSEE within thirty (30) days after such damage or destruction. In case LESSOR shall not so elect to terminate this lease, in such event, this lease shall continue in full force and effect and if and so long as LESSEE is not in default, the LESSOR shall repair the leased premises with all reasonable promptitude, placing the same in as good a condition as they were at the time of the damage or destruction, and for that purpose may enter said premises and rent shall abate in proportion to the extent and duration of untenantability. In either event LESSEE shall remove all rubbish, debris, merchandise, furniture, equipment and other of its personal property, within five (5) days after the request of the LESSOR. If the leased premises shall be but slightly injured by fire or the elements, so as not to render the same untenable and unfit for occupancy, then the LESSOR shall repair the same with all reasonable promptitude, and in that case the rent shall not abate. No compensation or claim shall be made by or allowed to the LESSEE by reason of any inconvenience or annoyance arising from the necessity of repairing any portion of the building or the leased premises, however the necessity may occur. In no event shall the obligation of LESSOR hereunder extend to or include any obligation to repair damage caused by or attributable to rock or earth shift or fall, howsoever caused.

Safeway argues that under this provision, Americold had the option to terminate the lease in the event of damage by fire or other casualty and that, if Americold did not exercise this option, Americold was obligated to repair the leased premises "with all reasonable promptitude" and abate Safeway's rent for a period of time required for repair. Safeway contends that as a result of the fire and subsequent embargo the leased premises became untenable from the time of the fire until the expiration of the lease, and that because Americold failed to repair the leased premises Safeway is entitled to a total rent abatement pursuant to paragraph 8 of the lease. Americold, on the other hand, argues that the leased premises could have been easily restored but for Safeway's recalcitrance against taking any steps to remove its embargoed product from the leased space.

The court finds that questions of material fact prevent summary judgment on this contractual claim. It is readily apparent that the fire and resulting embargo rendered Safeway's leased space untenable for warehouse purposes for a period of time and, pursuant to the plain language of paragraph 8 of the lease, Safeway would be entitled to an abatement of rent for that period. However, it is not possible from the facts in the record to determine the duration of the untenability. If Safeway's factual contentions were to be believed, the fire and resulting embargo were so catastrophic that any ability for Safeway to use the leased premises for warehousing purposes after the time of the fire up until the expiration of the lease agreement was completely destroyed. If Americold's factual contentions were to be believed, shortly after the fire occurred the embargoed product could have been easily moved to another area and, following only minor sweeping and cleaning, the premises could have returned to normal operations and the only reason this did not happen was Safeway's unreasonable refusal to take any action regarding its embargoed product. Because the court finds that material facts are in dispute regarding the duration of the untenability of the premises and with regard to the parties' culpability regarding the duration of the untenability, Americold's summary judgment claim based on the provisions of paragraph 8 of the leasehold contract is denied.

### IV. Conclusion

IT IS, THEREFORE, ORDERED BY THE COURT THAT cross-claim defendant Safeway's motion for summary judgment of Americold's cross-claim (Doc. # 27 in case no. 92–2458–JWL) is denied.

IT IS SO ORDERED.