**HAZELWOOD LOGISTICS CENTER, LLC, Plaintiff/Appellant,**

v.

**ILLINOIS UNION INSURANCE COMPANY, Defendant/Respondent.**

**ED 105571**

Missouri Court of Appeals, Eastern District, DIVISION ONE.

Filed: December 19, 2017

Joseph R. Dulle, 7733 Forsyth Blvd., Suite 500, Clayton, MO 63105, For Plaintiff/Appellant.

Danny L. Worker, Kendall Canfield, 103 W. Vandalia Street, Suite 300, Edwardsville, IL 63025, For Defendant/Respondent.

SHERRI B. SULLIVAN, J.

### Introduction

Hazelwood Logistics Center, LLC (Appellant) appeals from the summary judgment entered by the trial court in favor of Illinois Union Insurance Company (Respondent). We affirm.

### Factual and Procedural Background

This case involves Appellant's claim under a premises pollution liability (PPL) policy with Respondent for payment of remediation costs for methane contamination at a landfill site. The PPL policy provides, in pertinent part, Respondent's agreement to pay for "remediation costs" arising out of "pollution conditions" where such costs result from a "claim" or "government" action. This coverage explicitly "only applies to 'pollution conditions' that first commence on or prior to June 7, 2006" due to a reverse retroactive date provision contained in an endorsement to the policy.

Appellant was formed to acquire and remediate an old illegal landfill site known as the Edwards Avenue Landfill (the EAL) in Hazelwood for development. The property was called the Hazelwood Redevelopment Area. Funded in part by BancorpSouth, Appellant hired the following contractors to remediate the property: Environmental Operations, Inc. (EOI), to provide environmental engineering and remediation services; Geotechnology, Inc. (Geotech), to provide engineering and consulting services to Appellant; Clayton Engineering Company, Inc. (Clayton), to provide engineering services; and Budrovich Excavating, Inc. (Budrovich), a subcontractor to EOI, to provide clearing, excavation, and screening of trash from the EAL, including construction of an engineered cell at the property in which to contain the screened trash underground.

After the contractors completed work, in a letter to Appellant dated October 1, 2008, the Missouri Department of Natural Resources (MDNR) stated several areas of the engineered cell's cap were observed to be bubbling during a site visit on April 16, 2008, and ordered Appellant to perform testing for methane gas. In October 2009, the testing confirmed hazardous methane conditions. By correspondence dated February 11, 2010, Appellant demanded coverage from Respondent for remediation of the pollution condition of methane gas on the property to satisfy the MDNR. On May 7, 2010, Respondent denied coverage because the pollution condition occurred after June 7, 2006.

BancorpSouth sued Appellant in federal court for breach of contract and breach of guaranty (Bank Note Lawsuit). As an affirmative defense in the Bank Note Lawsuit, Appellant alleged, under the commercial frustration doctrine, it was relieved of its obligations under the loan agreement because the unforeseen methane gas contamination due to the contractors' negligent remediation of the landfill at the property made the redevelopment project, which was the purpose of the loan, impossible. The United States Court of Appeals rejected this argument. See BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC, 706 F.3d 888, 897 (8th Cir. 2013). The Court affirmed the district court's entry of summary judgment in favor of the bank on its breach of contract claim against Appellant and its breach of guaranty claim against Paul J. McKee, Jr., individually and as trustee of the Paul J. McKee, Jr. Revocable Trust. In BancorpSouth's lawsuit against the environmental contractors (Contamination Lawsuit), Appellant intervened and filed a complaint against certain of its contractors for breach of contract and negligence based on the faulty engineered cell and resultant methane gas pollution. That litigation ultimately ended after four years with voluntary dismissals of the claims with prejudice. The summary judgment record does not disclose any terms of settlement between the parties.

In the instant litigation over the PPL policy, both parties filed competing motions for summary judgment as to whether there is coverage for the pollution. Respondent contends it is not liable for the

2008 pollution condition caused by negligent contractors. Appellant maintains the 2008 methane gas emissions were coming from the trash that was in the landfill site prior to June 7, 2006, and under the terms of the policy as written by the parties, Respondent should be liable for any claim for remediation of these emissions. The trial court decided the undisputed facts in the matter provide that the 2008 pollution condition of methane gas discharging from the landfill site was caused by the contractors' improperly designed engineered cell used to remediate the trash after June 7, 2006, resulting in the MDNR's action. The trial court noted Appellant admitted as much in the federal case by alleging "the contractors negligently caused methane gas to spread 'across portions of the property previously uncontaminated by same.'" BancorpSouth Bank, 706 F.3d at 892. The trial court then found Respondent entitled to judgment as a matter of law based on a summary judgment record of undisputed material facts. The trial court granted Respondent's motion and denied Appellant's motion. This appeal follows.

## Points on Appeal

In its first point, Appellant alleges the trial court erred in granting summary judgment to Respondent because Respondent is not entitled to judgment as a matter of law in that the record establishes that the pollution condition of methane existed on the property prior to June 7, 2006, or, at a minimum, a genuine issue of material fact exists regarding whether the pollution condition of methane existed on the property prior to June 7, 2006.

In its second point, Appellant contends the trial court erred in denying partial summary judgment to Appellant because no genuine issues of material fact exist and Appellant is entitled to coverage as a matter of law in that the record shows the pollution condition of methane existed on the property prior to June 7, 2006, and all

requirements for coverage under the PPL policy are satisfied.

## Standard of Review

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Maxam v. American Family Mut. Ins. Co., 504 S.W.3d 124, 126 (Mo. App. W.D. 2016); Floyd–Tunnell v. Shelter Mut. Ins. Co., 439 S.W.3d 215, 217 (Mo. banc 2014). A trial court's grant of summary judgment and the interpretation of an insurance policy are questions of law that this Court reviews de novo. Maxam, 504 S.W.3d at 126; Floyd–Tunnell, 439 S.W.3d at 217.

Ordinarily, the denial of a motion for summary judgment is not an appealable order because it is not final, but an exception exists "where the merits of the motion for summary judgment are intertwined with the propriety of an appealable order granting summary judgment to another party." Sauvain v. Acceptance Indem. Ins. Co., 339 S.W.3d 555, 568 (Mo. App. W.D. 2011) (internal quotations omitted); Keystone Mut. Ins. Co. v. Kuntz, 507 S.W.3d 162, 166 (Mo. App. S.D. 2016).

## Discussion

There is no issue as to the construction of the PPL policy's coverage language. Rather, Points I and II are inextricably intertwined as their resolution rests on the determination of whether the pollution condition of methane existed on the property prior to June 7, 2006, and therefore whether coverage exists under the PPL policy making Appellant entitled to partial summary judgment on the issue of coverage; or whether, at a minimum, a genuine issue of material fact exists regarding whether the pollution condition of methane existed on the property prior to June 7, 2006, rendering summary judgment on the

issue of coverage in favor of Respondent inappropriate. Appellant presents argument that three separate admissions on the part of Respondent constitute uncontroverted factual evidence the methane pollution existed on the property prior to June 7, 2006; and one allegation by Appellant in a related federal case does not constitute uncontroverted factual evidence the methane pollution did not exist on the property prior to June 7, 2006.

### A. Alleged Admissions by Respondent

Appellant claims the methane gas pollution condition existed on the property prior to June 7, 2006. In support of this claim, Appellant asserts Respondent admitted on multiple occasions that methane gas existed on the property prior to June 7, 2006. After being contacted by the MDNR, Appellant sought coverage from Respondent. In its initial February 11, 2010 letter, Appellant cited a Remediation Cost Containment (RCC) Policy, also issued by Respondent, which had not been renewed. Respondent replied on February 24, 2010, indicating the RCC policy had expired, which no one disputes, so it would review the PPL policy for possible coverage. On May 7, 2010, Respondent notified Appellant the PPL policy did not provide coverage because the pollution arose after June 7, 2006, the reverse retroactive date in the PPL policy.

#### 1. Respondent's May 7, 2010 Correspondence

Appellant maintains Respondent's May 7, 2010 correspondence denying Appellant's claim for coverage asserted "the methane condition falls within the 'pollution conditions' described in the documents identified in Paragraph III of the Re-Opener Endorsement" and the methane gas resulted from *"the decomposition of the trash" Respondent admits was present on the site prior to June 7, 2006.*

There is no dispute there was trash on the property prior to June 7, 2006; but not methane gas emissions, which were the subject of the MDNR's 2009 action. The old trash on the property is not the pollution condition subject to the MDNR's action. Rather, it was the method of containment of the trash in the engineered cell that generated the methane emissions, which did not exist prior to June 7, 2006, as admitted to by all the experts.

#### 2. Respondent's June 10, 2010 Correspondence

Appellant asserts Respondent again admitted methane gas is a pollution condition under the PPL policy in a follow-up communication dated June 10, 2010, when it stated that because methane gas is the result of the decomposition of trash, and trash was present on the property and identified in some of the documents identified in the Coverage Limitation Endorsement, that the endorsement barred coverage for methane. Appellant contends Respondent asserted alternatively that to the extent the methane constituted a new pollution condition that was created after June 7, 2006, the reverse retroactive date barred coverage because the definition of pollution condition refers to gas; it clearly evidences the dispersal or release of gas, which would include methane gas; and methane gas constitutes a pollution condition.

■ We construe these statements as denials of coverage. These letters were generated early in the claims process, and statements in preliminary claim evaluations that address possible situations are not admissions of fact estopping an insurer from later making alternate analyses of claims based on the generation of facts. Brown v. State Farm Mut. Auto. Ins. Co., 776 S.W.2d 384 (Mo. banc 1989). And again, we note the pre-June 7, 2006 trash

was not the subject of the MDNR's letter. It was the methane gas that developed after June 7, 2006, which concerned the MDNR.

A denial of summary judgment may not rest upon the mere allegations or denials of the party's pleading. Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial. Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 120 (Mo. banc 2010). Appellant has failed to do that.

### 3. Respondent's Statement of Uncontroverted Material Facts

Appellant states Respondent also admitted the pollution condition of methane existed on the property prior to June 7, 2006, in its Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment. In its Statement of Facts, Respondent stated *if the RCC policy had not expired, it would have provided coverage for the methane pollution condition.* The expired RCC policy provided coverage of any pollution condition if it commenced prior to the inception of the RCC policy period, which was June 7, 2006 to June 7, 2008. Appellant construes Respondent's statement that the RCC policy would have provided coverage for the methane pollution condition *had it been in force* is also an admission that *the methane pollution condition existed on the property prior to June 7, 2006.*

Respondent's statement was a hypothetical, in that it merely theorized if the RCC policy had been renewed, which it had not, it would have provided coverage for cost overruns if the cost exceeded $5,455,150 for "Landfill Remediation Work." That statement of fact merely explains why Respondent indicated the RCC policy was

inapplicable and turned to the PPL policy. Regardless, no cost overruns exceeded $5,455,150 during the pendency of the RCC policy. Furthermore, it is a hypothetical statement because the RCC policy had expired and was not in effect. Any statement by Respondent about what it may hypothetically have covered had it been renewed does not translate into a statement of fact admission about what the PPL policy in force covers.

The ostensible "admissions" made by Respondent in various correspondence and one hypothetical reply based on another expired insurance policy are just that: contrived constructions of selected portions of correspondence or hypothetical statements which do not amount to fact to support *or* defeat a motion for summary judgment. The *genuine* material facts concern the timing of the evolution, existence, and cause of the methane condition, *not the trash* that existed prior to June 7, 2006.

### B. Appellant's Allegations in Federal Case

Appellant claims its allegation "the contractors negligently caused methane gas to spread across portions of the property previously uncontaminated by same" in the related federal court case is not an admission and does not establish, as a matter of law, that the methane pollution condition did not exist on the property until after June 7, 2006. However, the trial court used the allegation as a synopsis of the sum total of testimonial and documentary evidence presented by Appellant in that case supporting the ultimate factual conclusion that the methane gas pollution condition arose *after* June 7, 2006; was caused by the construction and implementation of the engineered cell by Appellant's contractors; and thus was not covered by the PPL policy. Respondent presented this evidence in the summary judgment record as factual evidence procured through extensive

discovery of Appellant's experts and contractors. The trial court did not rely on a simple allegation made by Appellant in another case to issue summary judgment in Respondent's favor, as Appellant implies.

Whether or not the methane gas pollution existed prior to June 7, 2006, is a factual issue to be established by expert testimony and scientific evidence for summary judgment purposes. The genuine material facts were generated by expert testimony and scientific documentation and made part of the summary judgment record. This factual evidence was most extensively documented in the litigation between Appellant and its contractors and made part of the summary judgment record in the case *sub judice*. There is no genuine issue of material fact that the methane emissions leading to the MDNR's action were not existent until generated by the faulty engineered cell constructed after June 7, 2006.

Eric Page (Page), Vice President of Consulting Services at EOI, one of the contractors, prepared a Remedial Completion Report that described the work done in the field. In his deposition taken March 4, 2013, in the contamination lawsuit on behalf of BancorpSouth, Page testified that prior to the remediation, the trash on the property was so old that methane would not be a problem: "The material was old, too old to produce methane." After June 7, 2006, the contractors hired by Appellant put the trash into a sealed anaerobic, *i.e.*, oxygen-free, clay-lined engineered cell and buried it deep underground. After the engineered cell was completed, the MDNR found the methane gas problem was originating from within the engineered cell and required Appellant to clean up methane gas that had developed at the site. As a result, Appellant sued its contractors alleging they each created and participated in creating new environmental hazards on the property, which were not there previously.

■ In Appellant's response to Respondent's statement of uncontroverted material facts, Appellant acknowledged the methane gas was generated by the anaerobic decomposition of EAL trash that was put in the cell and buried on the property. This occurred after June 7, 2006. Thus, in its suit against its contractors, Appellant specifically alleged the remedial action proposed for and constructed upon the property included the placement of biodegradable waste in an engineered cell and in deep fill areas outside the cell, with no provisions made in the design, construction, or implementation for monitoring or control of the accumulation of landfill gas or liquid leachate, which is the liquid that drains or "leaches" from a landfill. Appellant's allegations against the contractors were that they caused the high methane levels that arose across portions of the property previously uncontaminated by methane through the remediation. The methane discovered outside the engineered cell exceeded acceptable levels established by the MDNR. These are specific, substantive, factual assertions provided by expert scientific testimony and are not mere general allegations amounting to legal conclusions.

In summary, the MDNR approved a Remedial Action Plan (RAP) that called for screened EAL waste to be placed into a clay-walled engineered cell to be constructed on the western part of the property. That work was completed in 2007. In 2009, methane was detected on the western part of the property. All of the experts in this case agree the engineered cell was generating the methane. Thus, the summary judgment record is clear that the methane condition did not exist on Appellant's property prior to June 7, 2006. By Appellant's own admission, it did not arise

until 2008, and was due to its contractors' negligence, to-wit: "the contractors negligently caused methane gas to spread 'across portions of the property previously uncontaminated by same.'" Appellant hired the contractors to clean up the trash that was present on the landfill site prior to June 7, 2006. Their negligent cleanup created the existence of methane gas which did not manifest itself until after June 7, 2006, when there was no coverage for cleanup of same. Appellant cannot dispute this fact. Therefore, there was no coverage under the policy for MDNR's action for the methane gas emission pollution cleanup. Respondent is entitled to judgment as a matter of law based on this record of undisputed facts. Points I and II are denied.

### Conclusion

The trial court's judgment is affirmed.

Robert G. Dowd, Jr., P.J.; and Kurt S. Odenwald, J., concur.